**SOUTHWEST WHEEL & MANU-FACTURING COMPANY**

v.

**UNITED STATES of America.**

**PRIOR PRODUCTS, INC.**

v.

**UNITED STATES of America.**

**Civ. A. Nos. 3–2418, 3–2419.**

United States District Court
N. D. Texas,
Dallas Division.

April 9, 1969.

Cecil L. Smith, Stroud & Smith, Dallas, Tex., for plaintiff.

Martha Joe Stroud, Asst. U. S. Atty., Howard A. Weinberger, Ft. Worth, Tex., for defendant.

## FINDINGS OF FACT

HUGHES, District Judge.

1. The cases of Southwest Wheel & Manufacturing Company v. United States of America, CA–3–2418 and Prior Products, Inc., v. United States of America, CA–3–2419 were consolidated since both cases involve substantially identical issues of fact.

2. Suits were filed by both parties for the recovery of manufacturers excise taxes, interest and lien fee; $133,131.45 by Southwest and $83,142.57 by Prior Products. The periods involved with respect to Southwest encompass all four quarters of 1964 and the first three quarters of 1965. With respect to Prior Products, the periods involved are all quarters of 1964 and 1965.

3. The United States filed a counterclaim in which it prays that in case Southwest Wheel & Manufacturing Company is found not a manufacturer liable for the excise taxes heretofore assessed against it Prior Products be held liable and judgment for the amount assessed and paid by Southwest be rendered against Prior Products.

4. Prior to the institution of this action claims for refund for the quarters involved had been filed by each of the parties. More than six (6) months elapsed after the filing of the claims prior to the institution of these actions. All jurisdictional prerequisites were met by both parties prior to the filing of their first amended complaints. Southwest Wheel paid taxes for the years 1964 and 1965 which were not charged to the customers in the amount of $18,-112.69. Prior Products paid taxes in the amount of $18,313.94 for the years 1964 and 1965, which were not charged to the customers. Proper consents were obtained by Southwest Wheel to the allowance of the refund of taxes collected from purchasers for the years 1964 and 1965 in the amount of $94,534.50. Proper consents were obtained by Prior Products to the allowance of the refund of taxes collected from purchasers for

the years 1964 and 1965 in the amount of $51,862.83.

5. Both plaintiffs are corporations, duly incorporated in the State of Texas with their principal office and place of business in Dallas, Dallas County, Texas.

6. The products involved are anhydrous ammonia tank wagons. The wagons are of two basic types—one, two wheeled and the other, four wheeled, to which an anhydrous ammonia tank is attached.

7. Seven different models are involved. LF–1962 and LF 1962A consist of front wheels and axle assembly with a towing bar and rear wheels and axle assembly. The tank is welded or bolted to the front and rear sections. LF 3962 has a pole connecting the front and rear axle assemblies which can be adjusted to make the wagon longer or shorter and about which the rear axle can twist and with a bolster on the front and rear axles to which a tank is welded. A 1000 gallon tank is normally used on this wagon. Model LF 31262 is of the same type construction as Model 3962, only with a higher rated capacity, usually a 1500 gallon tank. Models LF–1000 and LF–1200 have tandem wheels. Model LF–5462 has only one axle and two wheels and is constructed similar to the front axle of LF–3962 and is designed for a 4500 pound capacity tank using a 500 gallon tank.

8. Usually the wagons are sold by the manufacturer to distributors who furnish them to farmers with the tank attached. The anhydrous ammonia placed in the tank is a gaseous compound which, when kept under pressure, is a liquid, used by the farmers as a fertilizer. The anhydrous ammonia is put in the ground by an applicator with long blades through which ammonia gas escapes from a tank on the applicator. Tanks on wagons such as involved in this case may be moved to different locations on the farm, near where the applicator tanks are being used. A second method is for the tank wagon to be towed through the field by a tractor and to be connected to the applicator knives located on the tool bar of the tractor. The knives cut a trench in the soil into which the pressure in the tank forces the ammonia.

9. There are two methods of refilling the tank, the first from the supplier's tank truck while the ammonia wagon stays on the farm. The more general method is for the farmer to tow the wagon and tank back to the supplier and have it refilled or to obtain another wagon and tank. Normally there is a supplier within a radius of from five to ten miles.

10. The same tank and wagon may remain on the farm anywhere from one to thirty days. While being used by the farmer it remains on the farm the entire period except for the relatively short time required to go to the suppliers for refill. Depending on the general rate of application only one or two round trips are made each day during the fertilizing season. At the most the wagons are used on the highway not more than one hour a day and are actively used on the farm for about eleven hours a day. Where the farmer irrigates his land, the ammonia is slowly bled into the irrigation system and the ammonia tank wagons remain on the farm as long as thirty days.

11. The wagons sold by both Plaintiffs for mounting fertilizer tanks are of rugged construction. The axles are a spring loaded torsion type known as the Linco Level Load axle. The shock absorbing of the springs over rough terrain on the farm helps eliminate stress and strain on the pressurized tank. The hub groups used on the wagons are a farm implement type hub group and wheel. The bearings are implement type bearings, not designed for highway speed. Most of the wheels used are implement type rather than automotive type. Normally the wagons are not equipped with brakes except in those states requiring every type of vehicle to have brakes. The recommended speed for loaded wagons is not over thirty

miles per hour and in most cases twenty miles per hour. The tires generally used on the wagons are implement type designed for heavy loads and low speeds. They have rib type treads designed to prevent sinking into soft plowed soil. They are made of relatively cheap soft rubber and are rated by the manufacturer for not more than twenty miles per hour. The construction of the wagons is such that they would whip and vibrate severely if towed at highway speeds. They are equipped with an eye or alligator type tow bar hitch rather than the ball and socket tow bar hitch normally associated with trailers designed for highway use. The wagons sold by Plaintiffs are not normally equipped with stoplights, taillights or clearance lights.

12. Southwest sells various items that go into the construction of the wagons to Prior Products which assembles them. The wagons are sold to Southwest for resale or to suppliers and distributors of anhydrous ammonia, who, in turn, make the tank wagons available to the farms.

## CONCLUSIONS OF LAW

 1. Vehicles designed or adapted for purposes predominantly other than the transportation of persons or property on the highway even though incidental highway use may occur are not subject to the manufacturers, excise tax.

2. The ammonia tank wagons sold by Southwest and Prior Products were primarily designed and constructed for use on farms. Even though they may be incidentally used on highways, they are not trailers within the meaning of section 4061(a) (1) of the code [26 U.S.C.A.].

3. The ammonia wagons involved herein are distinguishable from those held by Rev.Rul. 640107, 1964–1, (Part 1) C B 364 to be taxable in that those described in the Rev.Rul. had leaf springs, high speed bearings, were equipped with heavy-duty pneumatic tires, eye hitch, stoplights and taillights and were capable of being safely towed over the highways at normal highway truck speeds.

4. The tank wagons involved herein were nontaxable farm wagons and not subject to the manufacturer's excise tax.

5. Models LF 1962 and LF 1962A are not parts and accessories, but are tank wagons.

6. The wagons involved herein were not sold by Southwest or Prior Products for further manufacture.

7. Southwest is not a manufacturer within the meaning of the Internal Revenue Law.

8. Southwest and Prior Products are entitled to refunds of taxes paid.

9. The United States is not entitled to recover on its cross complaint.