**PACIFIC CAR AND FOUNDRY COMPANY, Plaintiff,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 22903.**

United States Court of Appeals Ninth Circuit.

Dec. 19, 1969.

Rehearing Denied Jan. 29, 1970.

Certiorari Denied April 20, 1970.
See 90 S.Ct. 1363.

David E. Carmack (argued), William A. Friedlander, Lee A. Jackson, Mitchell Rogovin, Johnnie M. Walters, Attys., Tax Division, Dept. of Justice, Washington, D. C., for appellants.

Thomas Todd (argued), of Helsell, Paul, Fetterman, Todd & Hokanson, Seattle, Wash., Baker & McKenzie, Chicago, Ill., for appellee.

Before MADDEN*, Judge of the United States Court of Claims, DUNIWAY, Circuit Judge, and TAYLOR, District Judge.**

## J. WARREN MADDEN, Judge:

The plaintiff, Pacific Car and Foundry Company, hereinafter designated as "taxpayer", brought this suit in the District Court to recover certain excise taxes which the United States had collected from it for the quarterly period January 1 through March 31, 1961. The District Court gave the taxpayer a judgment for the amount claimed by it, $3,813.47, plus interest. The United States has appealed from that judgment. The Jurisdiction of the District Court and that of this court are not questioned. The tax in question is the eight per cent excise tax imposed by section 4061(b) of the Internal Revenue Code of 1954, 26 U.S. C., 1964 ed., section 4061.

The K-W Dart Truck Company, a corporation, was a subsidiary of the taxpayer until some time prior to 1961, at which time the K-W Dart Company was dissolved, and since that dissolution its business has been carried on as a division of the taxpayer. As such a division, it will be designated hereinafter as K-W Dart. The taxpayer, at the time here involved manufactured, in Washington and California, trucks and automotive vehicles for highway use. Its division, K-W Dart, at the time here involved manufactured only off-highway vehicles. Its plant was in Kansas City, Missouri. Examples of the kinds of equipment manufactured by K-W Dart are mining vehicles, dump trucks of 30 to 120 ton capacity and dump trailers.

Section 4061 of the Internal Revenue Code of 1954, imposes, in its sub-section (a) a tax upon, inter alia, automobile and automobile truck chassis and bodies "(including in each case parts or accessories therefor sold on or in connection therewith or with the sale thereof)". In its sub-section (b), section 4061 said, at the time of the assessment of the tax here involved:

(b) *Parts and Accessories* * * * there is hereby imposed upon parts or accessories (other than tires and inner tubes and other than automobile radio and television receiving sets) for any of the articles enumerated in subsection (a) (1) sold by the manufacturer, producer, or importer a tax equivalent to 8 per cent of the price for which so sold * * *

* Honorable J. Warren Madden, Senior Judge of the U. S. Court of Claims, sitting by designation.

** Honorable Fred M. Taylor, United States District Judge, District of Idaho, sitting by designation.

Treasury Regulations on Manufacturers and Retailers Excise Tax (1954 Code) says:

SEC. 48.4061(a)–1 Imposition of tax.

(d) Nonhighway vehicles. A chassis or body specified in section 4061(a) (see paragraph (a) of this section) which is not designed for highway use is not subject to the tax imposed by such section. The following are examples of vehicles which are not designed for highway use, and, therefore, not taxable: Road graders, bulldozers, power shovels, earth movers, farm tractors, motor-driven vehicles designed and adapted for use in pulling or drawing vehicles around the premises of factories and railway stations, and small trucks for handling baggage and trunks at railway stations.

The effect of the Treasury Regulation quoted above, interpreting section 4061(a) as not including nonhighway vehicles is that section 4061(b) does not impose a tax upon parts and accessories for nonhighway vehicles.

There are a large number of manufacturers who make parts and accessories for motor vehicles. These include those who manufacture the vehicles themselves, and install the parts in the completed vehicle which they sell, but also manufacture additional parts and accessories which are separately sold for replacement of used or damaged parts, or for addition to vehicles. Also there are numerous manufacturers of parts and accessories only, who sell parts to manufacturers of vehicles for installation in the original vehicles before sale, or sell them to dealers for resale for replacement purposes or for addition to vehicles. Of all the parts and accessories which are manufactured and sold, at least 90% of them are designed and adapted for use on, and are actually used on taxable, i.e., highway vehicles. A few of the total of parts manufactured, though constituting a small fraction of the total, most of which total are designed and adapted for highway vehicles, are usable and are used on nonhighway vehicles.

There being, then, many, 90% of the total, parts and accessories which are usable and used on vehicles taxable under section 4061(a) (1), but a few of which are also usable and used on nonhighway vehicles, our question is, which of the total are, within the language and meaning of section 4061(b), "parts and accessories for any of the articles enumerated in subsection (a) (1)" of section 4061. One way of arriving at the answer would be to wait and see what actually becomes of a part which is one of the ambivalent few. That would be impracticable, of course since the tax is imposed upon the manufacturer of the part, or under section 4223(a) of the 1954 Code, upon one who, as this taxpayer did, purchased from the manufacturer under an exemption certificate and neither of these persons could know what was the ultimate destination of a particular part which was usable, for example, either to repair an automobile, or to repair one of the heavy machines such as those which K-W Dart deals in. K-W Dart had 30 to 40 distributors of its nonhighway vehicles, throughout the United States. Each distributor, no doubt, had a parts department where an individual or an automobile repair shop operator could buy whatever was in stock. If the word went around in an area that a K-W Dart part was better or cheaper for repairing an automobile than other available makes of parts, the information would have been used by interested persons, and the Government would have lost its tax upon the part so sold. It would have been impossible for the Government to police such a leakage of its revenues.

The Government audit upon which the assessment of the tax herein question was based proceeded as follows. The parts sold by the taxpayer in the third quarter of 1962 were analyzed and it was determined that 9.786% of K-W Dart's total sales of parts and accessories for that quarter were sales of replacement parts which parts had been

purchased from suppliers [1] by K-W Dart and which the auditor asserted were primarily adapted for use on taxable highway vehicles. The parties agreed that the 9.786% figure could be applied to the tax period, the first quarter of 1961, involved in this litigation.

In determining the parts or accessories sold by K-W Dart to be considered taxable, the Internal Revenue Agent analyzed, *mirabile dictu*, approximately 7,000 parts. He made large exclusions which the parties do not question. He studied the price lists and catalogs of the suppliers who had sold parts to the taxpayer. In these documents he found that the suppliers had in 85% of the cases noted the part to be either taxable or exempt. If there was no such notation, as to a particular part, in the price lists or catalogs, the auditor made his determination from descriptions contained in the catalogs and from conversations with K-W Dart parts department employees. As we have seen, he concluded that 9.786% of the parts bought by K-W Dart and re-sold by it to its distributors were taxable parts. A deficiency based upon that figure was assessed against the taxpayer, and paid, and the instant suit is for a refund to the taxpayer of that payment.

More than 90% of the total sales of each type of part or accessory treated [by the auditor] as taxable are sold by the original suppliers to customers (other than K-W Dart), who plan to use the same and actually do use the same on taxable highway vehicles when viewed on the basis of the total industry in the United States. In other words, suppliers to K-W Dart Truck Co. of the parts and accessories treated by the auditor as taxable also sold such parts to others. More than 90% of the total sales by such suppliers of such parts were eventually used on taxable highway vehicles. Such parts were not the same parts as those sold to K-W Dart Truck Co., but were identical in kind (Findings of Fact XIII, Record p. 152).

K-W Dart off-highway vehicles were specifically designed to make use of the parts here in question (Findings of Fact XX, Record p. 154).

What the Government has taxed, then, in this case are parts adapted for and in nearly all cases designed for use in taxable highway vehicles, of a type of which more than 90% of the total made and sold in the parts industry are actually used in taxable highway vehicles. Of the remaining less than 10% of the total we do not know how many such parts were actually put into K-W Dart's non-taxable vehicles. The trial court found that all of such parts, were *intended* by the taxpayer, when sold to its distributors, for use as replacements or repairs on the non-taxable off-highway vehicles which it had furnished to its distributors and that at least 95% had been actually so used. Those figures would, of course, leave a substantial number of such parts available for sale by the taxpayer's distributors to persons or enterprises which actually used them to repair automobiles or other taxable vehicles, and such sales would deprive the Government of its proper tax. We have, hereinabove, adverted to that problem in some detail.

The trial court, in its conclusions of law in discussing the "proper test of taxability" said:

In the context of this case, the tax which defendant seeks to collect was due only if the parts in question were primarily adapted for use on highway vehicles and not equally well adapted for use on off-highway vehicles. "Adaption (sic) for use" is a relation between the part and the vehicle on which it is to be used. It can only be determined by considering both the part and the vehicle together.

In this case, the K-W Dart off-highway vehicles were specifically de-

---

1. Sales of parts manufactured by the taxpayer itself were not included. The reason for this does not appear, but neither party makes a point of the fact.

signed to use the parts in question. There was, therefore, no use for which the parts were better adapted, so the parts were at least equally well adapted for use on highway and off-highway vehicles. Accordingly, plaintiff was not liable for the Federal Excise Tax * * *

The taxpayer urges the correctness of the position of the trial court. It seems to us, however, that it means that the Government, in order to get its taxes must police the career of a potentially taxable part down to its ultimate destination; that a manufacturer of hundreds of thousands of automobiles and of a few thousand off-highway non-taxable vehicles could design his non-taxable vehicles, as K-W Dart did in this case, so that parts designed and manufactured for his automobiles would be perfectly adapted for his non-taxable vehicles, and could thus impose upon the Government the impossible task of following the ambivalent parts to their ultimate use and indeed could successfully refuse to pay a tax upon any of those parts, because each of the parts was perfectly adapted for use on non-taxable vehicles. It would not be a manufacturer's tax, because the manufacturer would not know whether a particular part, or a lot of 10,000 parts, was taxable or not. It is desirable, therefore, if it is possible, that there should be an objective test of taxability which can be applied when parts leave the factory.

The Government says that such an objective test was formulated by the Supreme Court of the United States in the case of Universal Battery Co. v. United States, 281 U.S. 580, 50 S.Ct. 422, 74 L. Ed. 1051 (1930). In that case the Court, in interpreting the language in the then applicable statute, which language now appears in 4061(b) of the Internal Revenue Code of 1954, supra, and which imposes a tax upon parts or accessories "*for* any of the articles enumerated in subsection (a)", was required to determine whether a part which could be used as a replacement part in an automobile chassis or body but which could be used for some other purpose having no relation to a taxable motor vehicle was a part or accessory *for* a taxable motor vehicle and was therefore taxable under section 4061(b). (emphasis added) The court in *Universal Battery,* supra, at pp. 583–584, 50 S.Ct. at p. 423 said:

> * * * it would be unreasonable to hold that articles equally adapted to a variety of uses and commonly put to such uses, one of which is use in motor vehicles, must be classified as parts or accessories *for* such vehicles. And it would be also unreasonable to hold that articles can be so classified only where they are adapted *solely* for use in motor vehicles and are exclusively so used. (emphasis added)

One thing is plain in this language of the Supreme Court. The Court did not mean that, in order to determine the taxability of the manufactured article, the Government must wait and see what the article is actually used for.

The tax which the Supreme Court dealt with in *Universal Battery,* supra, was, after it had been in effect for some years, repealed, but by section 606 of the Revenue Act of 1932, 47 Stat. 261, it was reimposed. The report of the Senate Finance Committee, explaining the bill which became the Revenue Act of 1932 [S.Rep.No.665, 72d Cong., 1st Sess. p. 44 (1939–1 Cum.Bull. (Part 2) 496, 528] said in part:

> The House bill contained a provision, which is retained by your committee, to eliminate the effect of certain court decisions under which many parts and accessories have escaped tax under prior Revenue Acts on the ground that they were not "primarily adapted" for use on automobiles or trucks, since they might be used on boats, tractors, etc. Under the bill, spark plugs, storage batteries, leaf springs, coils, timers, and tire chains, if suitable for use on automobiles and trucks, will be taxable as parts or accessories whether or not "primarily adapted" for such use. As to other parts and accessories, the test of taxa-

bility will be the same as under the prior laws, since those enumerated represent the principal items as to which question has arisen, and to extend the list would result in the inclusion of articles whose use on automobiles and trucks may be minor as compared with their other uses.

In this report the Senate Finance Committee made it plain that parts and accessories were in some cases to be taxable, whether or not they were ultimately used in taxable vehicles. This was specifically accomplished by the list which was embodied in the statutes. The Committee also made it plain that the "primarily adapted" for use on automobiles test which had been applied by some courts, had caused some items to *escape* taxation. And the fact that the Congress did not make a longer list [2] did not, it seems to us, indicate congressional adoption of the "primarily adapted" standard for determining taxability or its opposite, as that standard had been applied by various courts.

The Government says that *Universal Battery*, supra, means that for a part to be exempt from tax under section 4061(b) it must (1) be primarily adapted for use on vehicles taxable under section 4061(a), but (2) must be equally adapted for a variety of uses, i. e., equally adapted for uses in fields outside of the generic field of motor vehicles and (3) must be commonly or generally so used in a variety of fields. We are not able to find, in the *Universal Battery* opinion, supra, as specific and definite a formulation as the Government urges upon us. But we do detect, in the Supreme Court's language, and in the language and the action of Congress, discussed above, a view that this taxing statute should not be given such an interpretation as would make it impracticable of effective administration and collection of the taxes which the Congress intended to impose.

The Supreme Court in *Universal Battery*, had before it the question whether storage batteries, which had been invented and developed and put to a great variety of uses before they were used in automobiles, were parts or accessories *for* automobiles, within the meaning of the statute. It held that they were not. But the court said that it would be unreasonable to hold that articles can be classified as being parts or accessories for motor vehicles and therefore taxable, "only where they are adapted solely for use in motor vehicles and are exclusively so used". In applying the Court's language to our instant problem, we must consider, not motor vehicles as distinguished from objects other than motor vehicles, but taxable motor vehicles as distinguished from non-taxable motor vehicles. Thus adjusted, the Court's statement would be that it would be unreasonable to hold that articles in question can be classified as parts or accessories for taxable vehicles "only where they are adapted solely for use in taxable vehicles and are exclusively so used". What, then would the Supreme Court do with our instant situation in which the parts in question are not "adapted solely" for use in taxable vehicles, but 90% of which are in fact used in taxable vehicles. If something short of "solely" would be enough, in the Supreme Court's view, to classify them as taxable, it would seem that 90% would be enough.

If a mechanical part will work at all in a machine in which it is inserted, it is "adapted" for use in that machine, and language, such as that of the Supreme Court in *Universal Battery* suggesting degrees of adaptability such as

2. A part of section 606 of the Revenue Act of 1932 is now section 4062(a) of the Internal Revenue Code of 1954, and reads as follows: Section 4062(a) Certain articles considered as parts. For the purposes of section 4061, spark plugs, storage batteries, leaf springs, coils, timers, and tire chains, which are suitable for use on or in connection with, or as component parts of, any of the articles enumerated in section 4061(a) shall be considered parts or accessories for such articles, whether or not primarily adapted for such use.

primarily, equal, or sole must relate to the extent to which the part has been, in practice, made use of in the industry involved. If one skilled in the trade were shown an object and asked what it was, and said "That is a part for an automobile", and then, on further inquiry had said that that kind of part could be, and sometimes was, used in stationary gasoline engines, that statement would not contradict his earlier statement that the object was a part for an automobile, which is what the statute defines as taxable.

Revenue Ruling 59–362, 1959–2 Cum.Bull. 255, says in part, about the provisions of section 4220(2) of the Internal Revenue Code of 1954, redesignated as part of section 4221 by the Excise Tax Technical Changes Act of 1958, C. B.1958–3, 92:

> The exemption from tax provided by section 4220(2) was authorized by Public Law 367, 84th Congress, 69 Stat. 689, C.B. 1955–2, 768. However, that provision was not intended to exempt from tax parts or accessories sold for repair or replacement purposes. See Report No. 1162 of the Committee on Finance, United States Senate, C.B. 1955–2, 884. Moreover, there is no provision of law or regulations under which automobile parts or accessories may be sold tax-exempt for use for repair or replacement purposes on non-taxable off-highway vehicles.
>
> Accordingly, it is held that an automobile parts or accessories manufacturer is liable for the manufacturer's excise tax imposed by section 4061(b) of the Code on his sales of those parts or accessories the primary use of which is in connection with taxable highway vehicle chassis or bodies, even though they are sold for use for repair or replacement purposes on non-taxable off-highway vehicles.
>
> However, under the provisions of Section 6416(b) (2) (K) of the Code, a credit or refund of the manufacturer's excise tax paid on automobile parts or accessories (other than spark plugs and storage batteries) may be allowed with respect to such articles used or sold for use as repair or replacement parts or accessories for farm equipment (other than equipment taxable under 4061(a)). Before the Code was amended by the Excise Tax Technical Changes Act of 1958, section 6416(b) (2) (F) of the Code contained similar provisions relating to automobile parts or accessories (other than spark plugs, storage batteries, leaf springs, coils, timers, and tire chains).

The regulations thus show that, with the exception of the provision for farmers, the interpretation of the statute by the government agency charged with its administration is the "primary use" interpretation and not the ultimate use test. The regulations are of long standing. They are reasonable and entitled to weight, in the interpretation of the statute. Aran v. United States, 259 F.2d 757 (C.A. 9, 1958).

The treatment of the problem by the automobile parts industry itself, as shown in the instant case, has been in accord with the view which this opinion expresses. In their catalogs and price lists they, generally, listed as taxable those types of parts which they knew to be widely used in the automobile industry, and were, they supposed, taxable, unless they were sold under an exemption certificate, to be used by incorporation by a manufacturer into a vehicle. The industry has not, apparently, been aware of any other way of determining at the manufacturing stage, the taxability of the product manufactured and sold.

In Dart Truck Co. v. United States, 159 F.Supp. 303 (D.C.W.D.Mo.1958) the decision was in accordance with what the taxpayer urges us to hold in this case. The decision was not appealed, but the Government has declined to follow it. In Crown Products Co. v. United States, 239 F.Supp. 1009, 1014 (D.C. Neb.1965), the Court held in effect, to the contrary.

We think that the correct interpretation of section 4061(b) of the Internal Revenue Code of 1954 is the interpretation given in the Revenue Ruling quoted above in this opinion. The only other interpretation would be the one urged by the taxpayer and adopted by the District Court in his case. But that would mean, as we have said above, that the taxability of any individual part or accessory could be determined only when it had been actually incorporated for use in a vehicle. If the vehicle was a taxable one, a tax would be payable. If the vehicle was a non-taxable, nonhighway vehicle, no tax would be payable. But the section 4061(b) tax is a tax on the manufacturer, producer or importer, not a tax upon the ultimate user. And the fact as it was in our instant case that some non-taxable vehicle had been so designed by someone that the individual part in question could be used as a replacement part in that non-taxable vehicle, and was perfectly adaptable for such a use, would, under our taxpayer's theory, mean that every such part, no matter by whom it was manufactured, and even though, as in our instant case, at least, 90% of all of such parts actually manufactured are ultimately used as replacement parts in automobiles, would be non-taxable. If it is a fact, as we suppose it to be, that none of the largest manufacturers of taxable and non-taxable vehicles and parts have ever tested our taxpayer's theory by attempting to carry it to its logical conclusion it must be because it has seemed, to their practical minds, that if a part or accessory is manufactured, of a type which, their experience tells them, will, in at least 90% of cases, be used in a taxable automobile, it is, in the terms of the tax statute, a part *for* an automobile and is therefore taxable.

Our conclusion is that, on the facts of this case, as recited at the beginning of this opinion, the articles involved were taxable under section 4061(b) of the Internal Revenue Code of 1954. The plaintiff is, therefore not entitled to recover, and the judgment of the District Court is reversed, with a direction that the taxpayer's complaint be dismissed.