**Bill WOODWARD d/b/a Bill Woodward Pickup Campers, Appellee,**

v.

**UNITED STATES of America, Appellant.**

No. 359–70.

United States Court of Appeals, Tenth Circuit.

May 12, 1971.

David L. Fist, Tulsa, Okla., for appellee.

Stephen Schwarz, Dept. of Justice, Washington, D. C. (Johnnie M. Walters, Asst. Atty. Gen., Washington, D. C., Meyer Rothwacks, William A. Friedlander, Dept. of Justice, Washington, D. C., with him on the brief), for appellant.

Before PICKETT and HOLLOWAY, Circuit Judges, and BRATTON, District Judge.

PICKETT, Circuit Judge.

This is an action brought by Bill Woodward to recover excise taxes paid on camper units manufactured and sold by him in Oklahoma for use on pickup trucks. The trial court held that the campers were designed to be used primarily as living quarters and exempt under 26 U.S.C. § 4063(a) (1).[1] The sole question presented by this appeal is whether the record sustains the finding that pickup camper units manufactured and sold by the taxpayer were designed primarily as living quarters within the meaning of the aforesaid statute.

During the period when the deficiency assessments were made, Woodward manufactured two types of camper units designed for mounting on pickup trucks. The construction of these units was identical except that one type, referred to as "slide-in," had plywood floors and lower sidewalls. The other, known as the "bolt-on" type, fitted on the pickup truck, utilizing the truck sides and floor as part of the unit. The cost of the lat-

---

1. 26 U.S.C. § 4063(a) (1) reads as follows:

"Camper coaches; bodies for self-propelled mobile homes.—The tax imposed under section 4061 shall not apply in the case of articles designed (A) to be mounted or placed on automobile trucks, automobile truck chassis, or automobile chassis, and (B) to be used primarily as living quarters."

ter type was approximately $30 less than the "slide-in" unit. It is conceded by the United States that the slide-in type unit was designed primarily for living purposes and exempt, from the excise tax.

All of the Woodward camper units were constructed with an inside wood paneling a 1¼-inch layer of fiberglass insulation, and an outside sheet of aluminum. The purpose of the insulation was to keep the units warner in the wintertime and cooler in the summertime. When mounted on the pickup truck, the unit had an interior height of about 55 inches. The units were constructed with crank-out type side windows, with inside screens, which could be opened and shut from the inside. There was also a front window and roof vent. The evidence is uncontradicted that the units were designed to be fitted with a double bed across the front end of the enclosure, a stove, sink, cabinets, and 110 volt wiring, but these accessories were not usually installed when the units were sold. Each unit was equipped with a 46-inch high insulated rear door which could be locked.[2]

The government does not explain why the addition of the lower wall and floor to the slide-in type unit brought it within the statutory exemp-

tion, and the other unit which utilizes the truck sides and floor was not exempt. It argues, however, that the statutory exemption is limited to units whose practical and preponderant use is as living quarters when sold. It argues also that the floorless camper was designed for a multiplicity of purposes, only one of which was for occasional camping or overnight sleeping. It is true that when the campers were sold they were not equipped with the customary facilities for living purposes, but they were designed to meet the needs of those who desired an inexpensive unit which could be equipped with accessories according to the purchaser's needs and desires for living purposes. The statutory exemption provision that the unit be designed "to be used primarily as living quarters" does not require that all the niceties of living quarters be installed before sale, or that they could not be used for any other purpose. It is sufficient if the design of the unit reasonably meets the statutory requirements. Woodward testified that all the campers which he had occasion to observe after he had sold them were used for living purposes. Another manufacturer of long experience testified that this type unit was primarily used for living purposes. The fact that some purchasers may have used them for other

2. From the evidence and an examination of the units by the court, the following findings were made:

"8. All units manufactured by the plaintiff have the following features: windows which are designed to open and close, being operated by a crank on the inside of the unit; screens on the windows; an insulated real (sic) door; insulated walls; an inside light; and inside finished paneling. Many of the units manufactured by the plaintiff during the period of time in question, contain a roof vent with a screen.

"9. The units manufactured by the plaintiff may be ordered by the customer with a bed, sink, cooking stove and 110 volt wiring. During the period of time in question, the plaintiff has manufactured approximately 400 units of all types, and only approximately ten of the units have been equipped by the plaintiff with the accessories listed

above. Most customers prefer to add their own beds, sinks and stoves because they can install these items on a 'do it yourself' basis at less cost than what the plaintiff would charge. The units manufactured by the plaintiff are constructed so that a bed can be installed for sleeping purposes and a cooking stove and sink can be attached to studs provided for that specific purpose behind the interior finished plywood paneling.

"10. Because the units manufactured by the plaintiff are equipped with movable windows and roof vents for ventilation, screens to protect against insects, insulated side walls and insulated door, interior light and interior finished paneling, all of which add to the cost of the unit, the Court finds that the units manufactured by the plaintiff during the period in question were designed to be used primarily as living quarters."

purposes, or partially for other purposes, would not affect the right to the exemption if the units were designed primarily for living purposes. There is an abundance of evidence to sustain the trial court finding. It is not clearly erroneous and will not be disturbed on appeal. Butler Paper Company v. Business Forms, Ltd., 424 F.2d 247 (10th Cir.1970); Davis v. Cities Service Oil Company, 420 F.2d 1278 (10th Cir. 1970); Knauff v. Utah Construction & Mining Co., 408 F.2d 958 (10th Cir. 1969), cert. denied, 396 U.S. 831, 90 S. Ct. 83, 24 L.Ed.2d 81 (1969); McMahon v. Caribbean Mills, Inc., 332 F.2d 641 (10th Cir.1964).

Affirmed.