**FARGO FOUNDRY STEEL & MANU-
FACTURING CO., a North Dakota
Corporation, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**Civ. No. A3–75–28.**

United States District Court,
D. North Dakota,
Southeastern Division.

July 14, 1976.

Phillip B. Vogel, H. Patrick Weir, Vogel, Vogel, Brantner & Kelly, Fargo, N. D., for plaintiff.

Harold O. Bullis, U. S. Atty., Fargo, N. D., Robert G. Burt, Trial Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OF DECISION AND ORDER

BENSON, Chief Judge.

### Statement of The Case

This is a civil action against the United States for recovery of a manufacturer's excise tax assessed and collected with interest for the period from the second quarter of 1968 through the third quarter of 1971. The United States contends the Field Service Unit manufactured by Plaintiff is a "part or accessory" within the meaning of 26 U.S.C. § 4061(b), and is subject to the 8 percent excise tax for the relevant period under that section. Jurisdiction is conferred on this Court under 28 U.S.C. §§ 1346 and 1402.

### Facts

Fargo Foundry Steel & Manufacturing Company was the manufacturer and seller of a portable fuel tank called a Field Service Unit that was designed primarily to be placed unattached on the bed of a pick-up truck to haul fuel from either a bulk distributor or a farm storage tank to farm implements in the field for refueling. The tanks ranged in capacity from 70 gallons to 200 gallons, and were flat-bottomed containers with rounded tops that relied on their weight for stability. Each unit was equipped with handles to facilitate portability and the units were not intended to be attached to the vehicle at any time. Fargo Foundry also offered pumps, hoses, and nozzles for the Field Service Units if desired by the purchaser, but these were not consistently sold as a part of each unit, nor were they installed by Plaintiff on any tank sold. The unit was designed primarily to provide the farmer with a more convenient and economical means to refuel farm equipment during the planting and harvesting seasons. Thus, it was used for the purpose for which it was primarily designed for periods of only short duration during the spring and fall. When not in use for its primary purpose, the unit was usually removed from the truck and could be used as an on-the-farm fuel storage tank. The units could be used by contractors to haul fuel over the highway to refuel construction equipment at job sites, but this was not the use for which they were primarily intended.

The principal market for the units was the Farmers' Union Central Exchange, which sold them to farmers. Prior to the development of the Field Service Unit, farmers generally used 55 gallon drums with spigots to transport fuel to the field. The Field Service Unit was essentially a convenient substitute for the unwieldy 55 gallon drums. Like the outdated drums, the Units were inextricably necessary for the transportation of fuel from the farm to the field. They were not intended to haul feed, seed or fertilizer.

In 1970, the Internal Revenue Service initiated an audit of Fargo Foundry. During the audit, the tax official requested advice from the national office pertaining to the application of the excise tax to the Field Service Unit. A technical advice memorandum was issued holding that the units were subject to the manufacturer's excise tax as "parts or accessories". Fargo Foundry did not attempt to obtain a Ruling from the Internal Revenue Service on the tax status of the Field Service Units. Quarterly assessments of excise taxes were levied for the period from the second quarter of 1968, through the third quarter of 1971, inclusive, which assessments, with interest, were paid by the Plaintiff under protest on December 29, 1971, in the total amount of $12,917.48. A timely claim for refund was thereafter filed and disallowed. Manufacture and sale of the Field Service Unit terminated in 1973.

### Conclusions

On the facts, the Court concludes the Field Service Units were primarily used in connection with vehicles named in § 4061(a), but that they were in effect the load being transported and had a primary function to serve a purpose unrelated to the vehicle as such. Accordingly, the Field Service Units were not "parts or accessories" within the meaning of 26 U.S.C. § 4061(b), and the Plaintiff is entitled to a refund of taxes and interest paid.

### Rationale

The manufacturer's excise tax was assessed pursuant to 26 U.S.C. § 4061, which provided in pertinent part:

"(a) Automobiles.—There is hereby imposed upon the following articles (including in each case parts or accessories therefor sold on or in connection therewith or with the sale thereof) sold by the manufacturer, producer, or importer a tax equivalent to the specified percent of the price for which so sold:

(1) Articles taxable at 10 percent, except that on and after October 1, 1972, the rate shall be 5 percent—
 Automobile truck chassis.
 Automobile truck bodies.
 Automobile bus chassis.
 Automobile bus bodies.
 Truck and bus trailer and semitrailer chassis.
 Truck and bus trailer and semitrailer bodies.
 Tractors of the kind chiefly used for highway transportation in combination with a trailer or semitrailer.
A sale of an automobile truck, bus, truck or bus trailer or semitrailer shall, for the purposes of this paragraph, be considered to be a sale of a chassis and of a body enumerated in this paragraph.

\*　　\*　　\*　　\*　　\*　　\*

(b) Parts and accessories.—

(1) Except as provided in paragraph (2), there is hereby imposed upon parts or accessories (other than tires and inner tubes) for any of the articles enumerated in subsection (a)(1) sold by the manufacturer, producer, or importer a tax equivalent to 8 percent of the price for which so sold, except that on and after October 1, 1972, the rate shall be 5 percent." [1]

The United States contended the Field Service Unit was a "part or accessory" under § 4061(b). Treas.Reg. § 48.4061(b)–2 provides:

"Definition of parts or accessories.

(a) *In general.* The term 'parts or accessories' includes (1) any article the primary use of which is to improve, repair, replace, or serve as a component part of an automobile truck or bus chassis or body, or other automobile chassis or body, or taxable tractor, (2) any article designed to be attached to or used in connection with such chassis, body, or tractor to add to its utility or ornamentation, and (3) any article the primary use of which is in connection with such chassis, body or

---

1. 26 U.S.C. § 4061 has been amended, but the amendments are not relevant to the issues in this case.

tractor, whether or not essential to its operation or use. The term 'parts or accessories' includes all articles which have reached such a stage of manufacture as to be commonly known as parts or accessories whether or not fitting operations are required in connection with their installation. An article shall not be deemed to be a taxable part or accessory even though it is designed to be attached to the vehicle or to be primarily used in connection therewith if the article is in effect the load being transported and the primary function of the article is to serve a purpose unrelated to the vehicle as such.

\* \* \* \* \* \*

(e) *Effective date.* This section shall be effective with respect to sales made on or after January 1, 1964."[2]

 The proper test of a product sought to be taxed under section 4061(a) and (b) is that of the primary use design of the product rather than the possibility of particularized ultimate use of either taxable or non-taxable variety. *Morris v. United States,* 484 F.2d 807, 809 (7th Cir. 1973); *Pacific Car and Foundry Co. v. United States,* 420 F.2d 905, 912 (9th Cir. 1969), *cert. denied,* 397 U.S. 1041, 90 S.Ct. 1363, 25 L.Ed.2d 652 (1970).

 The historical development surrounding subsections (a) and (b) of section 4061 supports the conclusion that the primary purpose of a "part or accessory" taxable under subsection (b) must be to contribute to the transportation function of the vehicle with which it is used. In *Universal Battery Co. v. United States,* 281 U.S. 580, 50 S.Ct. 422, 74 L.Ed. 1051 (1930), the United States Supreme Court stated:

"Thus the scheme of taxation embodied in these provisions [§ 900 of the Revenue Acts of 1918 and 1921, subdivisions 1, 2 and 3] centers around the motor vehicles enumerated therein. Their sale is the principal thing that is taxed, and the sale of parts and accessories 'for' such vehicles is taxed because the parts and accessories are within the same field with the vehi-

2. In October, 1973, the following Revenue Ruling was issued:

"Advice has been requested concerning application of the manufacturers excise tax imposed by section 4061(b)(1) of the Internal Revenue Code of 1954 to the tanks described below.

A company manufactures and sells portable field service tanks designed to be placed, unattached, lengthwise across the bed of the body of a pickup truck for use in fueling farm equipment in the field. A twin unit model has two separate 70-gallon tanks for gasoline and diesel fuel. The unit is also available in 120 and 140 gallon size tanks having single or double compartments. The tanks are rounded on top, flat on the bottom, average 24 inches in width and 27 inches in height with lengths of 2½, 4, and 5 feet for the 70, 120, and 140 gallon sizes respectively. They are available from the manufacturer thereof with or without the necessary pumps, fittings, hoses and nozzles.

Section 4061(b)(1) of the Code imposes a tax on parts or accessories (other than tires and inner tubes) for any of the articles enumerated in section 4061(a)(1) when sold by the manufacturer, producer, or importer thereof. Among the articles enumerated in section 4061(a)(1) are truck chassis and bodies.

Section 48.4061(b)–2(a) of the Manufacturers and Retailers Excise Tax Regulations provides that, in general, the term 'parts or accessories' includes (1) any article the primary use of which is to improve, repair, replace, or serve as a component part of an automobile truck or bus chassis or body, or taxable tractor, (2) any article designed to be attached to or used in connection with such chassis, body, or tractor to add to its utility or ornamentation, and (3) any article the primary use of which is in connection with such chassis, body, or tractor, whether or not essential to its operation or use. This section of the regulations also indicates that an article that contributes to the load-carrying function of a truck is a taxable part or accessory.

The tanks described above are designed to permit a pickup truck to carry fuel to farm equipment and thus contribute to the load-carrying function of the truck. Furthermore, the primary use of the tanks is in connection with pickup truck bodies.

Therefore, the fuel tanks are automotive parts or accessories within the meaning of section 4061(b)(1) of the Code, and sales of such tanks by the manufacturer thereof are subject to the tax imposed by that section. Where the tanks are sold by the manufacturer with the pumping equipment, the charge for such equipment is includible in the tax base." Rev.Rul. 73–443, Cum.Bull. 1973–43, 23.

"Revenue rulings are entitled to consideration but are accorded less weight than treasury regulations." *United States v. Eddy Brothers, Inc.,* 291 F.2d 529, 531 (8th Cir. 1961).

cles and *used to the same ends."* *Id.*, at 583, 50 S.Ct. at 423.[3] (Emphasis added)

In *Rue R. Elston Co., Inc. v. United States,* 532 F.2d 1176 (8th Cir. 1976), the Court considered whether a cargo heater used in truck trailers to prevent freezing of freight was taxable under § 4061(b). The taxpayer argued the heaters were excepted from taxation under Treas.Reg. § 48.-4061(b)–2(a) on the theory the heaters were the load being transported and their primary function was to serve a purpose unrelated to the vehicle as such. The Court considered the following to reach its conclusion the heaters were taxable as "parts or accessories": when the article's work begins and ends; whether the vehicle to which it is attached can function in its intended manner without the article; whether the article has a purpose separate from and independent of the vehicle itself; and whether the article is part of the load.[4]

Rev.Rul. 72–479, Cum.Bull. 1972–2, 544, held in considering the taxability of a spreading device attached to a dump truck that

> "Although the spreading device is designed to be attached to a truck body, it does not add to the utility of the body as a device for transporting property over the highway."

The spreading device was held not to be a "part or accessory".

■ The test for taxability of a product under 26 U.S.C. § 4061(b) is whether its primary purpose is to contribute to the transportation function of the vehicle with which it is used. In the case now before this Court, the purpose of the Field Service Unit is to contain fuel for transport to farm implements in the field. Its work begins at the central farm fuel storage tank and ends when the farm machinery has been re-fueled. The vehicle with which the Unit is used can function in its intended manner without the Unit because its primary purpose is to transport persons or cargo over the highways. The purpose of the Field Service Unit, as noted above, is separate from and independent of the vehicle itself. Finally, since a container is inextricably necessary to transport liquid fuel, the Unit is in effect part of the load being transported.

■■ Further, it is settled that the items listed in subsection (a) of § 4061 are taxable only if they are primarily designed and adapted for highway use, that is, for the transportation of property over the highway. *Big Three Industrial Gas & Equipment Co. v. United States,* 329 F.Supp. 1273, 1278 (S.D.Tex.1971); *aff'd* 459 F.2d 1042 (5th Cir. 1972); *Southwest Wheel & Manufacturing Co. v. United States,* 304 F.Supp. 225 (N.D.Tex.1969); Treas.Reg. § 48.4061(a)–1(d) (1963);[5] Rev. Rul. 58–424, Cum.Bull. 1958–2, 762; Rev. Rul. 57–440, Cum.Bull. 1957–2, 721. Plaintiff contends the non-highway use exception is equally applicable to "parts or accessories" sold by the manufacturer and taxed under § 4061(b). Unquestionably the vehi-

---

**3.** The current U.S.C. § 4061, Title 26, was derived from Section 3403, Internal Revenue Code of 1939, which was in turn derived from the Act of June 6, 1932, c. 209, § 606, 47 Stat. 261 and subsequent Acts, which contain provisions similar to those considered in *Universal Battery Co. v. United States,* 281 U.S. 580, 50 S.Ct. 422, 74 L.Ed. 1051 (1930).

**4.** Treas.Reg. § 48–4061(b)–2(a) provides the following example to illustrate the exception to taxation under § 4061(b):

"For example, a construction derrick attached to a truck is not a taxable part or accessory inasmuch as the derrick is the load of the truck and its use is in connection with construction work at a construction site rather than in connection with the transportation or loading or unloading function of the truck. On the other hand, an article such as a towing cradle or loading or unloading equipment, designed to be attached to or to be primarily used in connection with a truck is a taxable part or accessory inasmuch as the articles [sic] contributes to the load-carrying function of the truck."

The illustration further supports the principle that to be taxed the "part or accessory" must be primarily designed for use with a vehicle as a medium for transportation.

**5.** Treas.Reg. § 48.4061(a)–1 (1963) provides:

"(d) Nonhighway Vehicles. A chassis or body specified in section 4061(a) (see paragraph a of this section) which is not designed for highway use is not subject to the tax imposed by such section."

cles with which the Field Service Units were used were primarily designed and adapted for highway use. It is equally unquestionable that the units themselves were primarily designed and adapted for non-highway use. The primary design use of the Field Service Units does not contribute in any way to the primary design use of the vehicles with which they are used. They are not "within the same field . . and used to the same ends" with the items listed in § 4061(a)(1), which is the test set out in *Universal Battery Co. v. United States, supra,* 281 U.S. at 583, 50 S.Ct. at 423. They are not "parts or accessories" within the meaning of § 4061(b).

In view of the conclusion the Field Service Units are not "parts or accessories" under § 4061(b), the issue whether the pumps, nozzles, and hoses also supplied by Plaintiff to purchasers upon request are also taxable under § 4061(b) is moot.

IT IS ORDERED that judgment be entered for the Plaintiff in the amount of $12,917.48, plus interest as provided by law from December 29, 1971.