**James S. MYERS, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. A. No. 4–78–17.**

United States District Court, N. D. Texas, Fort Worth Division.

March 29, 1979.

Roy C. Basham, Jim Claunch, Fort Worth, Tex., for plaintiff.

Richard B. Vance, Asst. U. S. Atty., Fort Worth, Tex., and Martha Jo Stroud, Asst. U. S. Atty., Dept. of Justice, Dallas, Tex., for defendant.

HAND, District Judge, Sitting by Designation.

This is an excise tax refund suit in which the plaintiff seeks to recover payments made on taxes allegedly improperly assessed by the Internal Revenue Service. The goods upon which the taxes were assessed are "sleeper cabs" manufactured and sold by the plaintiff's company during the period from January 1, 1972 to June 30, 1975. The simple issue presented for the Court is whether goods of this nature are subject to the excise tax imposed by the Internal Revenue Code.

This matter came on for trial before the Court, Honorable W. B. Hand, sitting by designation, and the Court, having considered the record, the exhibits and the testimony adduced at trial, and the memoranda of law propounded by counsel for all parties, together with the applicable law, finds as follows:

## FINDINGS OF FACT

1. The plaintiff, James S. Myers, was at all times relevant to the instant lawsuit doing business as Texas Truck Sleeper Company [TTS]. TTS was, during the period from January 1, 1972 to June 30, 1975, engaged in the manufacture and sale of "sleeper cabs" providing attachable living accommodations for trucks. The sleeper cabs in controversy are used primarily by truck drivers for sleeping and for stowing personal belongings. The cabs are designed for mounting on trucks and were intended to be used as sleeping quarters. The units are self-contained and generally consist of a welded steel frame with a molded fiberglass top, aluminum sides and floor, finished wood paneling or naugahyde on the inside, and full insulation. Access is generally by an outside door, although special construction can provide direct access from the truck cab. The units come equipped with mattresses, dome lights, and curtains, and among the available extras are shelves, clothes hampers, television, speakers, and ice boxes.

2. The sleepers come in four models: 36 inches wide by 52 inches high by 42 inches deep; 36″ × 52″ × 25″; 36″ × 40″ × 42″; and 36″ × 40″ × 25″. The sleepers can be installed on trucks ranging in size from half-ton pickups to ten ton diesels, with the particular sleeper cab installed usually depending upon the wheelbase of the truck and the distance between the truck's cab and the fifth wheel.

3. During the period from January 1, 1972 to June 30, 1975 the yearly sleeper cab sales averaged 144, with approximately 25% to 30% of these cabs being installed in light pickup trucks. TTS advertised its cabs in *Overdrive* magazine, a trade publication of the trucking industry, and through brochures mailed directly to truck dealers. [Plaintiff's Exhibit 1]. 75% to 80% of the sales made by TTS were to truck dealers, and TTS installed approximately 75% of the units sold by truck dealers.

4. The parties have stipulated that the taxes assessed under section 4061(b) of the Internal Revenue Code, Title 26, U.S.C.A., § 4061(b) for the quarter years periods involved in this suit were as follows:

| Quarter | Units | Tax | Per Unit |
|---|---|---|---|
| 3/31/72 | 43 | $ 1226.21 | $ 29.00 |
| 6/30/72 | 43 | 1226.20 | 29.00 |
| 9/30/72 | 43 | 1226.20 | 29.00 |
| 12/31/72 | 43 | 1226.20 | 29.00 |
| 3/31/73 | 36¾ | 1898.52 | 51.66 |
| 6/30/73 | 36¾ | 1898.52 | 51.66 |
| 9/30/73 | 36¾ | 1898.52 | 51.66 |
| 12/31/73 | 36¾ | 1898.51 | 51.66 |
| 3/31/74 | 26½ | 1652.21 | 62.35 |
| 6/30/74 | 26½ | 1652.20 | 62.35 |
| 9/30/74 | 26½ | 1652.20 | 62.35 |
| 12/31/74 | 26½ | 1652.20 | 62.35 |
| 3/31/75 | 50 | 3071.70 | 61.43 |
| 6/30/75 | 26 | 1695.55 | 65.21 |
| TOTALS: | 501 | $ 23,874.94 | $ 696.76 |

The parties have further stipulated that plaintiff Myers made a payment of $680.00 on March 23, 1976 representing payment of the assessed tax on one unit in each quarter for 13 of the 14 quarters involved. It is for this amount that the instant refund suit was initiated on plaintiff's contention that such amount was improperly assessed and wrongfully extracted.

5. Truckers testifying at the trial indicated that they used the sleeper cabs to satisfy rest stop requirements imposed by the Department of Transportation Highway Safeway Board. On long-haul trips, the drivers usually pull into a truck stop or roadside park to rest when they reach the ten-hour driving limit. The Court finds from the evidence that there is no function or use for the sleeper cabs in question once they are separated from the vehicles to which they are attached.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter of this lawsuit and the parties hereto by virtue of Title 28, U.S.C.A., § 1346(a)(1), this being a civil action against the United States for the recovery of a tax allegedly erroneously assessed and collected.

2. The plaintiff makes a three-pronged attack on the deficiency determination of the Internal Revenue Service upon which the excise taxes were assessed, arguing first that the sleeper cabs do not amount to "parts or accessories" such as would be taxable under the Code, and alternatively that the sleeper cabs are exempted as living quarters under section 4063(a)(1), or as truck bodies suitable for use with light duty vehicles under section 4061(a)(2).

3. Section 4061 of the Internal Revenue Code, Title 26, U.S.C.A., § 4061, provides that:

(a) Automobiles.—There is hereby imposed upon the following articles (including in each case parts and accessories therefor sold on or in connection with the sale thereof) sold by the manufacturer, producer, or importer a tax equivalent to the specified percent of the price for which so sold:

\* \* \* \* \* \*

(b) Parts and Accessories—

(1) Except as provided in paragraph (2), there is hereby imposed upon parts and accessories (other than tires or inner tubes) for any of the articles enumerated in subsection (a)(1) sold by the manufacturer, producer, or importer a

tax equivalent to 8 percent of the price for which so sold . . ..

4. Section 48.4061(b)–2 of the Treasury Regulations on Manufacturers and Retailers Excise Tax (1954 Code) (26 C.F.R.) defines the term "parts and accessories" to include (1) any article, the primary use of which is to improve, repair, replace, or serve as a component part of a truck body; (2) any article designed to be attached to or used in connection with such body to add to its utility or ornamentation; or (3) any article, the primary use of which is in connection with such body, whether or not essential to its operation or use. The Regulations exclude from the definition of "parts and accessories" any article which is, in effect, the load being transported and the function of which is to serve a purpose unrelated to the vehicle as such, even though the load may be designed to be attached to the vehicle or to be primarily used in connection therewith.

5. The plaintiff argues that his sleeper cabs do not amount to parts or accessories under this definition, contending that the cabs merely constitute part of the load being transported by the vehicles to which they are attached and that the cabs do not contribute to the transportation function of the vehicles other than providing sleeping quarters for the drivers.

6. Whether an article is a part or an accessory within the meaning of the statute depends upon the primary purpose for which it is designed and used. *Rue R. Elston Co. v. United States*, 532 F.2d 1176, 1179 (8th Cir. 1976); *Pacific Car and Foundry Co. v. United States*, 420 F.2d 905, 911 (9th Cir. 1969), *cert. denied*, 397 U.S. 1041, 90 S.Ct. 1363, 25 L.Ed.2d 652 (1970); *Marwil Products Co. v. United States*, 418 F.2d 1345, 1348–50, 190 Ct.Cl. 127 (Ct.Cl. 1969). In this regard, more than a potential for alternate uses must be shown in order to justify a finding that an article's primary purpose was not for use in vehicles. *Universal Battery Co. v. United States*, 281 U.S. 580, 583–84, 50 S.Ct. 422, 74 L.Ed. 1051 (1930). The Court has found that the sleeper cabs were designed for installation on trucks ranging in size from one half ton pickups to ten ton diesels, which are within the class of vehicles enumerated in section 4061(a). The cabs are advertised and used by truck drivers for sleeping and for carrying personal belongings while they are on the road, and the cabs have no function or use apart from or unrelated to the vehicle to which they are attached, as may have been true of the field tanks found not to be accessories in the case cited by the plaintiff, *Fargo Foundry Steel & Mfg. Co. v. United States*, 415 F.Supp. 1362 (D.N.D.1976).

7. The Court is of the opinion that the sleeper cabs contribute directly to the transportation function of the vehicles by providing the drivers or relief drivers with a place to obtain rest breaks required by the regulations of the Federal Highway Administration. Section 393.76 of Title 49 of the Code of Federal Regulations sets the minimum standards for the design and construction of sleeper berths for the comfort and safety of drivers. Section 395.1 of the same title provides for and permits the use of sleeper cabs to satisfy rest requirements. Clearly the manufacture and sale of such cabs have no purpose beyond adding utility to the vehicle to which they are attached. This was the conclusion reached in Rev.Rul. 75–545, 1975 Cum.Bull. 427, and this Court concludes that the Ruling was correct in its determination that sleeper cabs designed to be attached to trucks and highway tractors do add to their utility and consequently amount to parts or accessories within the meaning of section 4061(b) of the Internal Revenue Code, Title 26, U.S.C.A., § 4061.

The plaintiff's argument that the cabs were not designed and do not contribute to the transportation function of the vehicle with which they are used, but rather reduce their transporting ability, is without merit. While the cabs do necessarily add some weight to the vehicles and may thereby slightly reduce the vehicle's cargo-handling ability, the Court is convinced that the cabs make a more substantial contribution to vehicle utility by maximizing use and minimizing costs. Without such cabs, many hours of vehicle time would be lost while

the driver sought some other sleeping accommodations to obtain the rest required under the law, thereby increasing costs from the loss of use of the vehicle and the costs of the accommodations ultimately found.

8. The plaintiff's second theory is that the sleeper cabs amount to living quarters for which an excise tax exemption is provided by section 4063(a)(1). That section provides that:

> (1) Camper Coaches; bodies for self-propelled mobile homes.—The tax imposed under section 4061 shall not apply in the case of articles designed (A) to be mounted or placed on automobile trucks, automobile truck chassis, or automobile chassis, and (B) to be used primarily as living quarters.

Title 26, U.S.C.A., § 4063(a). The plaintiff contends that he is entitled to an exemption under this statute, relying upon the Tenth Circuit's decision in *Woodward v. United States*, 442 F.2d 333 (10th Cir. 1971). This Court has no quarrel with the decision reached in *Woodward*, but finds it inapposite to the matter *sub judice* since *Woodward* dealt with living accommodations of a recreational nature attached to a pickup truck, while the accommodations in the instant case had a substantially greater commercially-related use. The facts of each case are different, and the Court is of the opinion that even the Tenth Circuit would not feel compelled to rely on *Woodward* in the instant case.

█ The distinction between the two types of living accommodations is well drawn by the history surrounding the legislation presently before the Court. Prior to the enactment of the section 4063(a)(1) exemption statute, Rev.Rul. 64–140, 1964–1 Cum.Bull. (Part 1) 374 determined that cabs similar to those before the Court were taxable parts or accessories. Following the enactment of the exemption statute the earlier ruling was superseded by Rev.Rul. 75–545, *supra*, which determined that the manufacture and sale of the cabs was not exempted by section 4063(a)(1) since they are not held out by the manufacturer as camp-

ing accommodations or living quarters. This determination was in definite contrast to Rev.Rul. 75–546, 1975–2 Cum.Bull. 428, which determined that an exemption was proper for those sleeper units that were specifically designed for pickup trucks and were held out by the manufacturers for use as sleeping quarters for hunters, fishermen, and other sportsmen. The Court is convinced that Congress intended, and the Secretary of the Treasury has established, a distinction with respect to the taxability of such sleeper units predicated upon whether a commercial or recreational function is intended to be made.

█ 9. The Court is convinced by a preponderance of the evidence that the sleeper cabs presently before the Court have a predominantly commercial function of providing added utility to vehicles to which they are attached by providing a convenient place for the driver to pass the rest period prescribed by the Federal Highway Administration's regulations. As such, the Court finds as a matter of law that the manufacture and sale of such cabs is not within the exemption afforded the recreational accommodation units by section 4063(a)(1).

█ 10. The final theory advanced by the plaintiff is that the sleeper cabs are entitled to exemption from the excise tax by virtue of section 4061(a)(2), which provides that:

> The tax imposed by paragraph (1) shall not apply to a sale by a manufacturer, producer, or importer of the following articles suitable for use with a vehicle having a gross weight of 10,000 pounds or less (as determined under regulations prescribed by the Secretary)—
>
> Automobile truck chassis.
> Automobile truck bodies.
> Automobile bus chassis.
> Automobile bus bodies.
>
> Truck trailer and semitrailer chassis and bodies, suitable for use with a trailer or semitrailer having a gross vehicle weight of 10,000 pounds or less (as so determined).

Title 26, U.S.C.A., § 4061(a)(2). The plaintiff contends that since all of the units manufactured and sold by TTS are suitable for use on vehicles described in section 4061(a)(2), and since the evidence revealed that many of the units were installed on such vehicles, the exemption is applicable to the manufacture and sale of these cabs.

In making this assertion, the plaintiff would have this Court determine that the sleeper cabs are actually truck bodies, a position not heretofore taken by any Court, regulation, or ruling. Such a finding would have to be made before the plaintiff could prevail, however, for the law is clear that no such exemption is available on the eight percent excise tax on parts and accessories. There is no authority for the plaintiff's position, and the legislation and regulations have always treated such cabs as parts or accessories.

11. It does not really matter whether the plaintiff's cabs are denominated truck bodies or parts or accessories, however, since this case involves taxes assessed prior to the implementation of the Tax Reform Act of 1976. During the period involved in this suit the exemption provided by section 4061(a)(2) extended only to original equipment included by the light duty vehicle manufacturer. The evidence in this case is clear that the plaintiff's cabs were not original equipment and thus were not entitled to an exemption under the prior law even if they were deemed to be light-duty truck bodies. Although the Tax Reform Act of 1976 may have opened the door for future exemptions for the plaintiff's cabs, and the Court passes no judgment with respect to whether it does or does not, the fact that the evidence reveals that the taxes in question were assessed on products sold prior to implementation of the Act, together with the fact that there was no evidence that the cabs were sold on or in connection with the manufacturer's sale of a light duty vehicle convinces the Court that the plaintiff's attempt to invoke the exemption provisions of section 4061(a)(2) is unwarranted.

12. The Court is of the opinion that the manufacturers' excise tax on parts and ac-cessories provided by section 4061(b) was properly assessed against the plaintiff for the first quarter of 1972 through the second quarter of 1975. Accordingly, the plaintiff's claim for a refund must result in a verdict for the defendant.