**VAN NORMAN INDUSTRIES, INC.**

v.

**The UNITED STATES.**
No. 9–61.

United States Court of Claims.
June 10, 1966.

Gilbert W. Rubloff, Washington, D. C., with whom was Asst. Atty. Gen. Mitchell Rogovin, for defendant. C. Moxley Featherston, Lyle M. Turner and Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

## OPINION

LARAMORE, Judge.

The question in this case is whether radio antennae, designed to be attached to automobile car bodies, are taxable as "automobile parts or accessories" under the manufacturers' excise tax provisions of the Internal Revenue Code of 1954. 26 U.S.C. § 4061(b) (Supp. II, 1952 Ed.). Plaintiff[1] paid the eight percent tax for the period October 1, 1955 to December 31, 1958, and petitions here for a refund of $138,240.82, with interest.

Plaintiff entered the radio antennae business on October 1, 1955, by acquiring the assets of the Insuline Corporation of America. Until May 31, 1957, it continued the business in a wholly-owned subsidiary; thereafter, it liquidated the subsidiary into itself and carried on the business directly. Subsequently, mounting operating losses forced final liquidation on December 31, 1958. For the duration of its proprietorship, plaintiff manufactured and sold three general types of antennae: automobile radio antennae, home radio antennae, and simulated antennae. Our concern is limited to the first. Automobile radio antennae must meet certain requirements to overcome the reception difficulties created by automobile design and use. Thus, automobile antennae must be durable for outside mounting, they must be insulated from the body, and they must be sensitive to receive signals from all directions. Plaintiff designed and manufactured antennae meeting these minimum requirements. Of course, most of its products met other requirements as well; *e. g.*, many were

John F. Costelloe, New York City, for plaintiff. James W. Rayhill, New York City, Toni Remble, San Francisco, Cal., Edward S. Wallach and Chadbourne, Parke, Whiteside & Wolff, New York City, of counsel.

1. Plaintiff was merged into Universal American Corporation, a Delaware corporation, on January 31, 1962.

designed for installation on specified automobile models, many had special features such as the ability to telescope or rise and lower automatically, many were made of special metals or available in unusual shapes and colors. In short, plaintiff offered a wide range of automobile radio antennae products to meet both minimum functional requirements and the vagaries of automobile owner taste. It distributed these products through wholesalers who dealt in automobile replacement parts and accessories.

In October 1955, when plaintiff entered the radio antennae business, the Internal Revenue Code of 1954 was in effect. Section 4061(b) imposed the following tax:

> There is hereby imposed upon parts or accessories (other than * * * automobile radio and television receiving sets) for any of the articles enumerated in subsection (a) [*e. g.*, automobile bodies] sold by the manufacturer * * * a tax equivalent to 8 percent of the price for which so sold * * *.

Because this was substantially the same as the 1939 Code provision (section 3403 (c)), the regulations under the 1939 Code were made applicable. Int.Rev.Code of 1954, § 7807(a); Treas. Reg. 46, § 316.2 (k) (1955). Section 316.55 of those regulations gave the following definition of automobile "parts or accessories":

> The term "parts or accessories" for an * * * automobile chassis or body * * * includes (1) any article the primary use of which is to improve, repair, replace, or serve as a component part of such vehicle or article, (2) any article designed to be attached to or used in connection with such vehicle or article to add to its utility or ornamentation, and (3) any article the primary use of which is in connection with such vehicle or article whether or not essential to its operation or use.

Insuline never paid the tax, nor did it indicate to plaintiff at the time of the sale of assets that plaintiff might be subject to tax in the future.[2] As part of the acquisition procedure, plaintiff requested a certified balance sheet to show the financial conditions of Insuline as of September 30, 1955. Neither the balance sheet nor an accompanying schedule of taxes payable showed any contingent excise tax liability. Not until September or October of 1957 did plaintiff realize that a tax might be asserted. It was at this time that it first heard about a 1956 Revenue ruling which held that automobile antennae were taxable as "parts or accessories" under section 4061(b). Rev.Rul. 56–698, 1956–2 Cum.Bull. 801. Because it feared an assessment accompanied by substantial penalties and interest, plaintiff began in earnest to find the answer to the tax question. Simultaneously, it started to accrue the contingent liability. As a first step, plaintiff's "house" accounting and legal advisors discussed the problem to review the reasons for Insuline's policy which they had continued. The record does not show the results of this inquiry; we know only that after this investigation, plaintiff concluded that it needed counsel's help. Two law firms were consulted in late 1957. A tax expert at plaintiff's regular law firm went to the Internal Revenue Service and established that the Service's position was clear that the automobile antennae were taxable. The record suggests that there was some discussion about a prospective-only application for the 1956 ruling, but plaintiff's witness could not give any conclusive testimony on the point. Whatever discussions there might have been no this point, however, plaintiff followed counsel's advice to file returns for the entire period it had owned the Insuline business. Plaintiff also filed a statement that it had not previously paid the tax on the advice of its accounting firm. For

2. Under the contract of sale, plaintiff assumed Insuline's liabilities; however, it assumed only those liabilities specifically enumerated in the audited financial statement of September 30, 1955.

this reason, the Service waived the delinquency penalties.

We have developed the facts from our commissioner's findings of fact. Under the order of reference, he did not submit an opinion or recommended conclusion of law. However, he did make certain "ultimate conclusions" which help us resolve the legal issue. He concluded the antennae "were not designed to add to the utility, as movable vehicles, * * * or ornamentation of the automobiles to which they were attached," but their "primary use * * * was in connection with automobiles." Both parties accept the report in its entirety. It may seem that plaintiff is admitting too much, because the ultimate conclusions neatly dovetail with the formulae in the regulations. Thus, although under our commissioner's view the antennae would not qualify as items adding to utility or ornamentation under clause (2) of section 316.55, supra, they would seem to qualify under clause (3) which prescribes taxability for "any article the primary use of which is in connection with such vehicle or article whether or not essential to its operation or use."

Plaintiff builds its argument on the premise that clause (3) does not mean what it apparently says. Plaintiff tells us we must give meaning to the words "whether or not essential to its operation or use." The theory is that primary physical use in connection with automobiles is not in itself the measure of taxability. If it were, there would have been no need for the "whether or not essential to its operation or use" language. Plaintiff says this language must mean that to be taxable, the article need not be *essential* to the automobile's operation or use, but it does have to serve *an* automotive function and this function must

be *primary*. Support for this is found in the current regulations. Section 48.-4061(b)–2(a) preserves the "primary use in connection with" test which it qualifies with new language stating that an article will not be taxable even though designed to be attached to the vehicle "if the article is in effect the load being transported and the primary function of the article is to serve a purpose unrelated to the vehicle as such."[3] An example of such an exempt article is a construction derrick attached to a truck. As the last step in its argument, plaintiff analogizes its automobile radio antennae to articles which are "the load being transported" and points out that the primary function of its products was "to serve a purpose unrelated to the vehicle as such"—*i. e.*, they were designed (as our commissioner found) "only to facilitate the satisfactory performance of radio receiving sets mounted within such automobiles," and had no automotive purpose or function.

Defendant brands plaintiff's theory as "revolutionary," and asserts that the "grandfather" case of Universal Battery Co. v. United States, 281 U.S. 580, 583, 50 S.Ct. 422, 74 L.Ed. 1051 (1930), originally used the language now seized upon by plaintiff. Defendant argues that the regulations simply picked up this language without intending to modify the Supreme Court's "primary use in connection with" test. Regarding the analogy of an antenna to a construction derrick, defendant suggests that in the case of derricks, cranes, concrete mixers and the like, the truck is actually the accessory. Rev.Rul. 59–288, 1959–2 Cum. Bull. 250. Then it states the obvious, that an automobile is in no sense accessory to a radio antenna, and rounds out the argument with the proposition that "primary function," if that means "con-

---

3. Section 48.4061(b)–2(e) of the current regulations provides that the "parts or accessories" section "shall be effective with respect to sales made on or after January 1, 1964." Reference is made to section 40.4061(b)–2 for the definition applicable to sales in prior years. Section 40.4061(b)–2 did not contain the qualifying language relied upon by plain-

tiff. Inasmuch as *this part* (the qualifying language) of the new regulations was well established by rulings, as the text *infra* shows, it is reasonable to assume that for this limited purpose the normal rule for interpretive regulations obtains —*i. e.*, that they have retrospective as well as prospective effect.

tribut[ing] to the *operation* of the vehicle" as plaintiff apparently urges, could not be the test inasmuch as the majority of the articles specifically enumerated in the current regulations have functionally little to do with the operation of the vehicle. See Treas. Reg. § 48.4061–2(d).

We are of the opinion that we have to look to the functional relationship of the article to the vehicle and not physical connection alone; this follows from *Universal Battery*. In determining the permissible scope of the Commissioner's taxing power, the Court took some pains to analyze the theory of taxing automobile accessories and concluded as follows:

> Thus the scheme of taxation embodied in these provisions centers around the motor vehicles enumerated therein. Their sale is the principal thing that is taxed, and the sale of parts and accessories "for" such vehicles is taxed *because the parts and accessories are within the same field with the vehicles and used to the same ends*. [281 U.S., at 583, 50 S.Ct., at 423.] [Emphasis added.]

Presumably an article connected to a vehicle but not "within the \* \* \* [motor vehicle] field" and not "used to the same ends" would not be taxable. Of course, any article that is designed for attachment to motor vehicles is immediately suspect, but the inquiry does not stop there. Properly viewed, attachment or connection raises a presumption only, rebuttable by evidence showing that "the primary function of the article is to serve a purpose unrelated to the vehicle as such." Thus, as plaintiff points out, the Service has long held that such articles as wrecking cranes, construction derricks, and concrete mixers which are designed for attachment to trucks, are not taxable because their primary function relates to non-transportation activities, and they do not contribute to any transportation activity. *E. g.*, S.T. 573, XI–2 Cum.Bull. 473 (1932); Rev.Rul. 165, 1953–2 Cum.Bull. 422; Rev.Rul. 56–479, 1956–2 Cum.Bull. 796; Rev.Rul. 59–288, 1959–2 Cum.Bull. 250. However, where the primary function relates to

the transportation activity, for example, where a truck-mounted crane is designed for loading and unloading thereby "contribut[ing]" to the load-carrying function of the truck," the article is taxable. *E. g.*, Rev.Rul. 65–166, 1965–1 Cum.Bull. 465; Rev.Rul. 65–156, 1965–1 Cum.Bull. 464. The current regulations now incorporate the distinction. Treas. Reg. § 48.4061 (b)–2(a) (1964).

Plaintiff's automobile radio antennae were designed for attachment or connection to automobiles, making the "parts or accessories" tax presumptively applicable. To rebut the presumption, plaintiff has relied on the undisputed showing in the record that the primary function of the antennae was to facilitate radio reception. This is not enough, however; the tax will be applicable unless "the primary function of the article is to serve a purpose unrelated to the vehicle as such." There is no precise measure of how close the relationship to vehicle use must be. The generality of the term "parts or accessories" suggests a broad interpretation. Reference to the examples in the regulations and rulings makes clear that it is the Service's view that the barest relationship will suffice. We are of the view that insofar as automobile radio antennae facilitate radio reception in an automobile they serve a purpose related to the vehicle as such and are "within the \* \* \* [motor vehicle] field" and "used to the same ends," to use the words of the Supreme Court. This is borne out by a review of the administrative practice and case law.

In 1933, the Commissioner of Internal Revenue was asked whether automobile radio sets were supplied to the tax on automobile "parts or accessories" or the tax on radio components. Revenue Act of 1932, §§ 606–607, ch. 209, 47 Stat. 169, 261–263. The Commissioner advised that "[a]utomobile radio sets specially designed and primarily adapted for use in automobiles are considered automobile accessories \* \* \*." S.T. 643, XII–1 Cum.Bull. 397 (1933). The Revenue Act of 1941, § 545, ch. 412, 55 Stat. 687, 712–713, amended section 3404 of the

Internal Revenue Code of 1939 (the successor to section 607 of the 1932 Act) to impose a ten percent tax on automobile radio receiving sets. Simultaneously, section 544(b) of the 1941 Act was enacted to amend section 3403(c) of the 1939 Code (the successor to section 606 of the 1932 Act) to expressly exclude radios from the five percent tax on automobile "parts or accessories." Congress apparently agreed with the Commissioner's earlier interpretation that "parts or acessories" included automobile radio receiving sets because it not only imposed a new tax on them in one section, but also amended the broad "parts or accessories" provision to specifically exclude them. S.Rep. No. 673, Part I, 77th Cong., 1st Sess., p. 48 (1941); H.Rep. No. 1040, 77th Cong., 1st Sess., pp. 32, 55 (1941). This dichotomy was carried into the Internal Revenue Code of 1954.

Automobile radio antennae are certainly as much automobile "parts or accessories" as automobile radios were before 1941 unless they come under the post-1941 umbrella of "automobile radio receiving sets." There are two reasons suggesting they do not. First, the parenthetical phrase which took "automobile radio receiving sets" out of the automobile "parts or accessories" provision referred only to "sets" and not to "sets" *and* parts or accessories sold separately. Int.Rev.Code of 1939, § 3403(c); Int. Rev.Code of 1954, § 4061(b). Second, the radio excise tax provision in which automobile radios were placed taxed as components "antennae of the 'built-in' type" only, and not automobile radio antennae.[4] Int.Rev.Code of 1939, § 3404 (b); Int.Rev.Code of 1954, §§ 4141, 4142.

This does not, then, appear to be the kind of problem created by the repeal of a tax on an article and the possible application of another, more general, tax that we recently faced in Thermo King Corp. v. United States, 354 F.2d 242, 173 Ct.Cl. —— (1965). What happened here is that Congress in 1941 effectively repealed so much of the automobile excise tax as it related to automobile radio receiving sets and subjected them to a higher tax elsewhere. The other provision did not apply to the antennae when sold separately, so it may be assumed that the lower automobile excise tax continued to apply to them. Plaintiff is really asking us to read into the 1941 legislation an intention to exempt the antennae from tax altogether, a result which would be incongruous in view of the fact that Congress exempted radios from the automobile excise tax for the purpose of exposing them to a higher tax. Thus, the Service was on sound ground when it ruled in 1956 that automobile radio antennae were taxable. Rev.Rul. 56–698, supra. Then in 1959, it reviewed the whole "parts or accessories" area prior to promulgating the first set of regulations interpreting section 4061(b) of the 1954 Code (the 1939 Code provision, section 316.55, was applicable from 1955 through 1959), and decided to add an "examples" provision. This provision gathered together many of the articles that had been ruled upon, and the Service took the logical step of including automobile radio antennae. Treas. Reg. § 40.-4061(b)—2(d), T.D. 6401, 24 F.R. 5901, 1959–2 Cum.Bull. 258, 264. As an interpretive regulation, it had retrospective as well as prospective effect. Treas. Reg. § 40.0–4. See n. 3, supra.

4. In its briefs and oral argument plaintiff indicated that the defendant's argument would lead to double taxation, for the antennae would surely be considered accessories to radios as well as to automobiles. This is somewhat misleading, as the facts show that none of plaintiff's automobile antennae sales were "in connection with the sale [of radios]." (The radio excise tax imposes tax on accessories sold with radios and on specified accessories or components when sold separately. Int.Rev.Code of 1954, §§ 4141, 4142.) If there were a double tax possibility, however, there is nothing to indicate that the Service would attempt to impose both taxes. The practice has been to assess the tax which "more specifically applies to that article." See Rev.Rul. 59–301, 1959–2 Cum.Bull. 291 (rear seat speakers); Rev.Rul. 64–311, 1964–2 Cum.Bull. 417 (mobile transceivers designed for automobile use).

The parties have argued the case law at length, so although we feel the early administrative practice is dispositive, we think it appropriate to discuss some of the cases. In Universal Battery Co. v. United States, supra, the Supreme Court reviewed five Court of Claims cases and attempted to fashion a standard of taxability.[5] In applying that standard to the cases on review, it reversed and remanded two and affirmed three. Bassick Mfg. Co. v. United States, 68 Ct.Cl. 366 (1929), rev'd; Universal Battery Co. v. United States, 66 Ct.Cl. 748 (1928), rev'd; F. W. Stewart Mfg. Corp. v. United States, 67 Ct.Cl. 275 (1929), aff'd; Gemco Mfg. Co. v. United States, 67 Ct.Cl. 287 (1929), aff'd; Vesta Battery Corp. v. United States, 67 Ct.Cl. 711 (1929), aff'd.

In Masterbilt Products Corp. v. United States, 42 F.Supp. 294, 95 Ct.Cl. 451 (1942), this court considered the applicability of the "parts or accessories" tax to an article which dispensed lighted cigarettes and was designed for attachment to automobile steering posts. There, as in *Universal Battery*, the question was whether an article adapted to automobile and non-automobile use (the cigarette dispensers could have been attached to a table or desk, for example), but primarily adapted for use in automobiles, should be taxed. The court held the cigarette dispensers were "parts or accessories" because they were "primarily adapted for use in motor vehicles" and served a purpose relating to the vehicle as such. It looked to those facts showing that they were "advertised as a safety device * * which enabled the operator of a car to obtain a lighted cigarette without taking his eyes from the road." 42 F.Supp., at 296, 95 Ct.Cl., at 454. Two Ninth Circuit cases use a similar approach. Masao Hirasuna v. McKenney, 135 F.Supp. 897, 900 (D.Hawaii 1955), aff'd, 245 F.2d 98 (9th Cir. 1957) (automobile seat covers); Aran v. United States, 259 F.2d 757, 759 (9th Cir.), cert. denied, 358 U.S. 866, 79 S.Ct. 100, 3 L.Ed.2d 100 (1958)

(baby bottle warmers designed to receive electric power from automobile cigarette lighter outlets). In *Aran,* the court acknowledged the broad scope of the "parts or accessories" provision, stating that it "can be interpreted rationally to include devices not essential to the operation or use of an automobile." 259 F.2d, at 759. Citing the administrative practice of taxing other articles designed to operate from automobile cigarette lighter outlets—*e. g.,* utility lights, heating pads, air-conditioners—the court emphasized the importance of the fact of a vehicle-related function, and concluded that the baby bottle warmer, designed and advertised for automobile use, met the test. We think all these cases are consistent with the notion of function we have sought to develop in the present case. See also King Trailer Co. v. United States, 228 F.Supp. 1013, 1019–1020 (S.D.Cal.1964), aff'd, 350 F.2d 947 (9th Cir. 1965).

Smith v. McDonald, 214 F.2d 920 (3d Cir. 1954) unquestionably supports an argument that automobile radio antennae are analogous to automobile radios and should, therefore, be excluded from the automobile "parts or accessories" tax. However, it also supports our view of automobile function. The article in question was an electric sign designed to be attached by suction cups to taxicab roofs. In 1941, there was a ten percent tax on electric signs and a five percent tax on automobile "parts or accessories." Int.Rev.Code of 1939, §§ 3406(a), (5), 3403(c). In 1942, the former tax was repealed. Plaintiff paid the ten percent tax in 1941 and no tax after its repeal. In 1950, the Collector assessed the automobile "parts or accessories" tax on all sales made after March 1945. This was very similar to the situation in Thermo King Corp. v. United States, supra. The Third Circuit did not use a *Thermo King* approach—*i. e.,* it did not conclude that repeal of the specific tax forbade application of the general; rather, it reasoned that taxi signs should be treated like

---

5. See discussion regarding *Universal Battery*, supra.

taxi meters which, like automobile radios, were excluded from the "parts or accessories" tax. Treas. Reg. 46, §§ 316.55 (a), 316.140(c). The court indicated that were this exclusion not available, the signs would be within the ambit of "vehicle-related function":

> Certainly it cannot be gainsaid that radios add to the "utility" of an automobile and particularly that taxi meters add to the "utility" of an automobile used as a taxicab. [214 F.2d, at 922.]

This is the portion of the opinion that comports with our view. Like the District Court in Masao Hirasuna v. McKenney, supra, though, we question that part of the opinion that analogizes taxi signs to taxi meters. 135 F.Supp., at 899. It seems to us that the statute exempted automobile radios and the regulations exempted taxi meters because both were specifically taxed elsewhere at higher rates. Without more, we could not find any intention to similarly exempt articles that may be analogous if they are not taxed elsewhere.

 In its petition, plaintiff alleged that it never collected the tax from a customer, nor did it ever pass the tax on. Our commissioner treated this as one of the issues in the case and made uncontested findings that confirm plaintiff's allegation. Accordingly, plaintiff is the proper party in interest under section 6416 of the Internal Revenue Code of 1954. It is true, of course, that manufacturers are expected to pass an excise tax on. See Worthington Pump & Machinery Corp. v. United States, 122 F. Supp. 843, 129 Ct.Cl. 87 (1954). Unless an eight percent tax on gross sales income is passed on, it will very likely eradicate the net profits of all but the most profitable enterprises. Plaintiff urges that imposition of this tax forced it out of the automobile antennae business, and that such a result is "a vivid example of administrative malfunction." The complaint seems to be that the Service unexpectedly and erroneously reversed what plaintiff claims to be a long-standing policy of not taxing automobile radio antennae when it published the 1956 ruling "having purportedly retroactive effect." Rev.Rul. 56–698, 1956–2 Cum. Bull. 801. Although plaintiff has not expressly suggested that the Service abused its discretion under section 7805 (b) of the Internal Revenue Code of 1954 in not limiting the ruling to a prospective-only application, we think that argument is implicit in the charge of "administrative malfunction." It has no merit, though, because unlike the plaintiff in International Business Machines Corp. v. United States, 343 F.2d 914, 170 Ct.Cl. 357 (1965), cert. denied, 382 U.S. 1028, 86 S.Ct. 647, 15 L.Ed.2d 540 (1966), plaintiff cannot even get over the first hurdle by showing that either it or its predecessor ever requested a ruling, nor has it shown any discrimination. Instead, the facts suggest that plaintiff simply relied on Insuline's prior policy and after becoming aware of the ruling determined that the tax was applicable. Even after it paid the deficiencies and started to pay current installments, however, it did not change its price policy to pass the tax on, apparently because of the extremely competitive conditions in the industry. This is not a picture of administrative abuse. Plaintiff's damage is not the fault of the tax law; rather, it stems from the combined effect of unfortunate advice and a highly competitive market for which we cannot grant relief.

Judgment is entered for the defendant. Plaintiff's petition is dismissed.