**RUE R. ELSTON COMPANY, INC.,**
**Appellee-Appellant,**

v.

**UNITED STATES of America,**
**Appellant-Appellee.**

**Nos. 75–1222, 75–1267.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 17, 1975.
Decided March 29, 1976.

David C. Forsberg, Briggs & Morgan, St. Paul, Minn., for Rue R. Elston Co., Inc. John M. Sullivan, Minneapolis, Minn., also appeared on appendix and briefs.

John G. Manning, Atty., Tax Div., Dept. of Justice, Washington, D. C., made argument for United States. Robert G. Renner, U. S. Atty., Minneapolis, Minn., Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews and Bennet N. Hollander, Washington, D. C., also appeared on briefs.

Before HEANEY, BRIGHT and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

This appeal arises out of a civil action against the United States for recovery of a manufacturer's excise tax assessed and collected with interest for the calendar quarter January 1 through March 31, 1966. Rue R. Elston Co., Inc. (Elston) is the manufacturer and seller of cargo heaters which are used in truck trailers to prevent the freezing of freight. The Commissioner assessed an excise tax on the sale of these heaters as truck or trailer "parts or accessories" pursuant to Section 4061(b) of the Internal Revenue Code of 1954.[1] Upon payment of the tax, Elston instituted this suit for refund pursuant to 28 U.S.C. § 1346(a)(1) contending (1) that the heaters were not taxable as "parts or accessories" pursuant to Section 4061(b) and (2) that, assuming the heaters to be taxable, the Internal Revenue Service had discriminated against Elston in connection with the imposition of the excise tax. The District Court found that the heaters were taxable pursuant to Section 4061(b), but held that IRS could not collect the tax since it had impermissibly discriminated against Elston in imposing the tax. Both the United States and Elston appeal. We reverse.

The material facts can be summarized as follows:

From some time prior to 1950, Elston has manufactured and sold cargo space heaters. These heaters are designed to heat freezable cargo transported in trucks, truck trailers, and semitrailers during cold weather. They are portable, are fueled with propane gas, and are usually attached to the trailer by wall brackets installed on the inside of the trailer. They are used primarily by over-the-road carriers for about three and one-half months a year depending on weather conditions; and, when not in use, they are generally kept in storage by the trucking companies which purchased the heaters.

While it is possible to adapt these heaters for use in other places where heat is desired, the heaters in question are specifically designed and installed for the sole purpose of protecting freezable cargo in over-the-road trailers. The heaters are advertised by Elston exclusively as cargo space heaters, and the advertising pamphlets used by Elston contain many photographs of the units installed as truck cargo space heaters.

In 1969, IRS conducted an audit of Elston and concluded that an excise tax should be imposed on the Elston cargo heater. In January, 1971, IRS notified Elston that it proposed to assess against Elston a deficiency in federal excise tax for the period January 1, 1966, through December 31, 1968. In April, 1971, Elston paid the deficiency for the period involved in this case. After the Commissioner failed to act on Elston's claim for refund, Elston filed this action.

During this period, the heating units of two other manufacturers, Preco, Inc. (Preco) and Thermo-King Corporation (Thermo-King), were not taxed pursuant to Section 4061(b) for two independent reasons. The facts concerning the non-taxability of these two units are set out below.

In March, 1955, Preco, a manufacturer of heaters designed to heat freezable cargo transported on railroad cars which could

1. 26 U.S.C. § 4061(b).

apparently, also be used on large trucks and trailers, received a ruling from IRS. This ruling advised Preco that if the heaters were used in trucks and trailers they would not be considered to be truck or trailer "parts or accessories" subject to the excise tax imposed by Section 4061(b). In 1957, Preco began to sell a heater designed for heating cargo in trucks. In August, 1970, Preco was informed in a technical advice memorandum that its truck heaters were considered to be truck or trailer "parts or accessories" pursuant to Section 4061(b). The memorandum noted, however, that Section 1108(b) of the Revenue Act of 1926, Ch. 27, 44 Stat. 9, 114 (1926), provides that no tax can be assessed or collected on the sale or lease of an article by the manufacturer if the article was sold in reliance on a ruling or regulation holding the article not to be taxable.[2] Consequently, IRS determined that Preco would not incur excise tax liability on the sales of these truck heaters which were made without payment of the tax in reliance on the 1955 ruling and sold prior to the memorandum.

The Thermo-King products were not subject to the excise tax by reason of two decisions of the United States Court of Claims, *U. S. Thermo Control Co. v. United States,* 372 F.2d 964, 178 Ct.Cl. 561, *cert. denied,* 389 U.S. 839, 88 S.Ct. 68, 19 L.Ed.2d 103 (1967), and *Thermo-King Corp. v. United States,* 354 F.2d 242, 173 Ct.Cl. 860 (Ct. Cl.1965). These decisions involved several units designed by Thermo-King to protect perishable cargo. All of the units had the capacity to cool the inside of a trailer, and five of the models had the additional capacity to heat a trailer cargo area. The court found that the units involved in that case were not taxable as "parts or accessories" under Section 4061(b) because Congress had earlier imposed an excise tax (later re-

pealed) directly on all types of refrigeration units, thereby evidencing an intent that such units not be taxed under Section 4061(b).

Following trial, the District Court issued an unreported memorandum decision holding (1) that the cargo heaters were automotive "parts or accessories" within the scope of Section 4061(b), and (2) that IRS had not discriminated against Elston in connection with the excise tax since there was no evidence of competition between Elston's product and the products of other manufacturers. Elston then moved for amendment of the judgment, and the court allowed Elston to submit additional evidence of competition between Elston and two other manufacturers of cargo heaters, Preco and Thermo-King, in order to determine whether IRS had discriminated against Elston. After hearing further evidence, the court issued an amended memorandum decision in which it (1) adhered to its earlier decision that the heaters were taxable under Section 4061(b); (2) held that there was no evidence of competition between the Thermo-King refrigeration/heating units and Elston's products and, therefore, there was no discrimination between the Elston and Thermo-King products, and (3) held that IRS's granting Preco's cargo heater tax immunity during the period from 1966 to 1970 while taxing the Elston heater constituted "direct and unquestioned discrimination" since the two heating units were in nationwide competition. The court thus held that the excise tax on Elston's heaters could not commence until January 1, 1971.

**I**

The first issue to be determined is whether the District Court's finding that the Elston heaters were "parts or accessories"[3] was clearly erroneous. *Aran v. Unit-*

---

**2.** Section 1108(b) of the Revenue Act of 1926 provides:

No tax shall be levied, assessed, or collected under the provisions of Title VI of this Act on any article sold or leased by the manufacturer, producer, or importer, if at the time of the sale or lease there was an existing ruling, regulation, or Treasury decision holding that

the sale or lease of such article was not taxable, and the manufacturer, producer, or importer parted with possession or ownership of such article, relying upon the ruling, regulation, or Treasury decision.

**3.** Section 4061(b) of the Code provides:
(1) * * * there is hereby imposed upon parts or accessories (other than tires and

*ed States,* 259 F.2d 757, 759 (9th Cir.), *cert. denied,* 358 U.S. 866, 79 S.Ct. 100, 3 L.Ed.2d 100 (1958). Elston contends (1) that its heater is not primarily for use on trucks because it can be adapted to a wide variety of uses; (2) that the heater is part of the load to be transported and its primary function is to serve a purpose unrelated to the vehicle; and (3) that heaters are generally not contemplated as within the scope of Section 4061(b).[4]

■ 1. *Primary use.* The statute was not intended to reach a unit simply because it could be adapted for use on motor vehicles. The regulations indicate that a "primary use" test is intended.[5] *See Marwil Products Co. v. United States,* 418 F.2d 1345, 1348–50, 190 Ct.Cl. 127 (1969). In applying this test, the courts have recognized that more than a potential for alternate uses must be shown; the units must in fact have been adapted and used in other ways which will justify a finding that its primary purpose is not for use in motor vehicles. *Universal Battery Co. v. United States,* 281 U.S. 580, 583–84, 50 S.Ct. 422, 423, 74 L.Ed. 1051, 1054 (1930); *Durkee-Atwood Co. v. Willcuts,* 83 F.2d 995, 997 (8th Cir. 1936). While Elston's product no doubt could have been adapted, with the aid of venting and other modifications, for use as a room space heater,[6] the record discloses

that the units had not in fact been so adapted or used, and the District Court's finding that the units were "specifically designed and installed for the sole purpose of protecting freezables when they are hauled over the road in truck trailers in freezing weather" was not clearly erroneous.[7]

2. *Nature and function.* Elston argues that since its heater is independent of a particular truck and is used only when freezing weather dictates and freezable cargo is being carried, it is more appropriately part of the load itself and serves a function unrelated to the truck and therefore qualifies as an exception under the regulation.[8] The regulations give an example which is useful here in making a proper distinction:

> For example, a construction derrick attached to a truck is not a taxable part or accessory inasmuch as the derrick is the load of the truck and its use is in connection with construction work at a construction site rather than in connection with the transportation or loading or unloading function of the truck. On the other hand, an article such as a towing cradle or loading or unloading equipment designed to be attached to or to be primarily used in connection with a truck is a taxable part or accessory inasmuch as the articles [sic] contributes to the load-carrying function of the truck.

inner tubes) for [trucks, buses, trailers] sold by the manufacturer, producer, or importer a tax equivalent to 8 percent of the price for which so sold, except that on and after October 1, 1972, the rate shall be 5 percent.

4. *See* note 3, *supra.*

5. 26 C.F.R. § 48.4061(b)–2 provides:
(a) *In general.* The term "parts or accessories" includes (1) any article the primary use of which is to improve, repair, replace, or serve as a component part of an automobile truck or bus chassis or body, or other automobile chassis or body, or taxable tractor, (2) any article designed to be attached to or used in connection with such chassis, body, or tractor to add to its utility or ornamentation, and (3) any article the primary use of which is in connection with such chassis, body, or tractor, whether or not essential to its operation or use. The term "parts or accessories" includes all articles which have reached such a stage of manufacture as to be commonly known as parts or accessories whether or not

fitting operations are required in connection with their installation . . . .

6. Elston suggests that space heaters may be used without venting for warming fish houses, heating merchandise under a plastic shield, and heating concrete during cold weather construction. It does not contend that its heater has been regularly used for such purposes.

7. As the District Court observed, Elston's advertising focused upon this primary purpose exclusively.

8. 26 C.F.R. § 48.4061(b)–2(a) provides in part:
* * * An article shall not be deemed to be a taxable part or accessory even though it is designed to be attached to the vehicle or to be primarily used in connection therewith if the article is in effect the load being transported and the primary function of the article is to serve a purpose unrelated to the vehicle as such.

26 C.F.R. § 48.4061(b)–2(a). Unlike the derrick illustration, the heater's work begins and ends during the period the truck is transporting its freezable cargo. Without it, the truck does not function for such products in its intended manner; the heater has no purpose separate from and independent of the truck itself. It is definitely not part of the load.

· 3. *Application of Section 4061(b) to heaters.* The suggestion that heaters are not intended to be covered by Section 4061(b) is without merit. Elston relies upon *U. S. Thermo Control Co. v. United States, supra,* and *Thermo King Corp. v. United States, supra,* wherein the court held that combination heating and refrigeration units were outside the "parts or accessories" classification. Analysis of those cases, however, reveals that the holding rested upon a conclusion that Congress intended to tax the unit under a specific excise tax on refrigerators rather than as "parts or accessories". No meaningful comparison of the Thermo King units with this unit is therefore possible, nor can any inference be drawn as to the heaters from the policy identified for combination units.

In summary, we hold that the finding of the District Court that Elston's heaters were "parts or accessories" subject to excise tax under Section 4061(b) is well-supported by the record and is not clearly erroneous.

## II

We come next to the government's contention that the District Court erred in granting a tax refund to Elston, notwithstanding its finding that the heater was a part or accessory for trucks, buses, and trailers, on the ground that to do otherwise would result in impermissible discrimination in favor of Elston's competitor Preco, which had enjoyed tax exemption through a favorable tax ruling.[9]

The District Court thought this issue was controlled by *International Business Machines Corp. v. United States,* 343 F.2d 914, 170 Ct.Cl. 357 (1965), *cert. denied,* 382 U.S. 1028, 86 S.Ct. 647, 15 L.Ed.2d 540 (1966), which gave special emphasis to the competitive relationship between I.B.M. and Remington Rand, to whom a favorable ruling had been issued. In that case, I.B.M., upon hearing of Remington's ruling, sought within three months to obtain a similar ruling. A two year delay followed, after which the Commissioner ruled that the computing devices of both companies were subject to excise tax. IRS refused I.B.M.'s request for a favorable ruling and withdrew its prior private ruling to Remington, effective prospectively in light of Section 1108(b) of the Revenue Act of 1926, which provides that no tax can be assessed on the sale or lease of an article by the manufacturer if it was sold or released from possession in reliance on a ruling or regulation holding that the article is not taxable. The net effect was that I.B.M. suffered tax liability during a period when its competitor did not. The Court of Claims in a divided opinion held that under the circumstances of that case,[10] the two competitors in the computer industry, one of which had received a ruling and the other of which had requested one promptly thereafter, were receiving different tax treatment under substantially the same facts and gave I.B.M. the same prospective relief as Remington had been granted.

The District·Court reasoned that the same situation obtained in this case and ordered relief for Elston during the same period in which Preco enjoyed freedom from the excise tax. There are, however, substantial and, we think, controlling differences between the *I.B.M.* case and the situation presented here.

First, no ruling was ever requested by Elston, whereas a prompt and vigorous

---

9. Elston also claimed that the IRS policy of not taxing Thermo King's combination units resulted in discrimination. The District Court rejected this contention on factual grounds.

10. The Court of Claims has subsequently recognized that its ruling was thus circumscribed. *Knetsch v. United States,* 348 F.2d 932, 940 n. 14, 172 Ct.Cl. 378 (1965), *cert. denied,* 383 U.S. 957, 86 S.Ct. 1221, 16 L.Ed.2d 300 (1966).

effort to obtain a ruling was made by I.B.M. It is the general rule that a taxpayer must itself seek a ruling in order to claim the benefit of favorable treatment; it is not enough that a private ruling has been issued to one similarly situated. *Shakespeare Co. v. United States,* 389 F.2d 772, 777, 182 Ct.Cl. 119 (1968); *Van Norman Industries, Inc. v. United States,* 361 F.2d 992, 999, 176 Ct.Cl. 16 (1966), *cert. denied,* 386 U.S. 981, 87 S.Ct. 1285, 18 L.Ed.2d 229 (1967); *Bornstein v. United States,* 345 F.2d 558, 564 n. 2, 170 Ct.Cl. 576 (1965). *See Bookwalter v. Brecklein,* 357 F.2d 78, 84 (8th Cir. 1966).[11]

Second, there is no showing in the record that Elston, in selling its product, placed any reliance upon the Preco ruling which would either invoke vicariously the provisions of Section 1108(b) or warrant a finding that a prospective application of the 1970 decision as to Preco was an abuse of the Commissioner's discretion under Section 7805.[12] As observed in *Bookwalter v. Brecklein, supra,* 357 F.2d at 83, there was a much greater reliance factor in *I.B.M.* which warranted an inference of discrimination. In *Bookwalter,* we denied prospective relief to a taxpayer who had paid the assessment before seeking a ruling or learning of the issuance of a favorable ruling to another taxpayer thereby demonstrating an absence of reliance. Under such circumstances, the taxpayer cannot demand parity

simply because the person obtaining a favorable private ruling was a competitor.[13]

Alternatively, Elston contends that Preco's 1955 ruling applied to a different product than its truck cargo heaters. It thus reasons that neither Elston nor Preco were in fact protected by private rulings and, under *I.B.M.,* should therefore receive the same tax treatment. We think the premise is faulty, however. Preco's private ruling contemplated the use of a Preco heater in truck trailers and IRS properly concluded that Preco could and did rely upon it, thereby precluding imposition of the tax while the ruling was in effect.[14]

Finding no impermissible discrimination under the narrow standard of *I.B.M.,* as applied to the circumstances of this case, we hold that it was error to abate collection of the excise tax otherwise lawfully imposed upon Elston.

The judgment is vacated and the cause remanded for entry of judgment consistent with this opinion.

---

**11.** "It is the practice of the Internal Revenue Service to answer inquiries of individuals and organizations whenever appropriate in the interest of sound tax administration, as to their status for tax purposes and as to the tax effects of their acts or transactions." 26 C.F.R. § 601.-201(a)(1). A "ruling" is a written statement issued to a taxpayer by the IRS National Office which interprets and applies the tax laws to a specific set of facts. 26 C.F.R. § 601.201(a)(2). The function of a ruling is to advise the taxpayer regarding the tax treatment he can expect from IRS in the circumstances specified by the ruling. A taxpayer may not rely upon a ruling issued to another taxpayer; and rulings may generally be revoked or modified by IRS at any time but such revocation or modification will, except in rare or unusual circumstances, be applied prospectively only with respect to the taxpayer to whom the ruling was originally issued. 26 C.F.R. § 601.201(1).

**12.** 26 U.S.C. § 7805(b) provides:

*Retroactivity of regulations or rulings.* —The Secretary or his delegate may prescribe the extent, if any, to which any ruling or regulation, relating to the internal revenue laws, shall be applied without retroactive effect.

**13.** The government asks us to go beyond detrimental reliance and disapprove the holding in *I.B.M.* We are not prepared to go so far, especially since the reliance factor present in *I.B.M.* is not present here and thus relief based upon a claim of discrimination is unwarranted in any event.

**14.** *See* Section 1108(b) of the Revenue Act of 1926.