LUCERO, Circuit Judge.
Wyodak Resources Development Corporation (“Wyodak”) sued the United States in federal district court, seeking a refund of coal reclamation fees it allegedly overpaid under the Surface Mining Control and Reclamation Act of 1977 (“SMCRA”), 30 U.S.C. §§ 1201-1328. The district court concluded that 28 U.S.C. § 1346(a)(1) provided a basis for federal jurisdiction and a waiver of sovereign immunity because the reclamation fee is an “internal-revenue tax.” See id. However, the court denied relief on the merits and entered summary judgment in favor of the United States. We do not reach the merits of Wyodak’s appeal. Exercising jurisdiction under 28 U.S.C. § 1291, we conclude the district court did not possess jurisdiction. Because the reclamation fee is not an “internal-revenue tax” within the meaning of 28 U.S.C. § 1346(a)(1), Wyodak’s claims may be filed only in the Court of Federal Claims under 28 U.S.C. § 1491.
I
Wyodak operates the Wyodak Mine, a large surface coal mine in the Powder River Basin of Wyoming. As a surface mine operator, Wyodak is subject to SMCRA. To further its goal of restoring mined land, SMCRA created the Abandoned Mine Reclamation Fund (“the Fund”), which exists on the books of the United States Treasury, but is administered by the Secretary of the Interior. 30 U.S.C. § 1231. SMCRA authorizes the Secretary of the Interior to assess reclamation fees on each ton of “coal produced” in the United States to finance the Fund. See id. § 1232. These reclamation fees are collected by the Secretary of the Interior, id., specifically, by the Office of Surface Mining Reclamation and Enforcement (“OSM”), see 30 C.F.R. §§ 870.1-19. During the time period at issue in this case, OSM used a two-tiered reclamation fee structure: ten cents per ton for lignite coal, and thirty-five cents per ton for all other grades. See Surface Mining Control & Reclamation Act of 1977, Pub.L. 95-87, tit. IV, § 402(a), 91 Stat. 445, 457.
Between January 1,1980, and December 31, 2005, Wyodak extracted more than 82 million tons of coal from the Wyodak Mine. It reported all of this coal as non-lignite and paid the higher reclamation fee of thirty-five cents per ton. In early 2005, Wyodak retained a consulting chemist to determine whether any of the coal at the Wyodak Mine was lignite. Samples taken from the ground showed that between 9.5% and 12.3% of the coal sampled in situ was lignite. In the first two quarters of 2006, Wyodak reported to OSM that it had extracted more than 2.2 million tons of coal and asserted that 282,988.42 tons of that total was lignite based on the chemist’s studies. In addition, Wyodak claimed that it had overpaid reclamation fees from 1980 to 2005 because some of the coal produced was lignite.
OSM audited Wyodak’s 2006 reports and concluded that Wyodak had underpaid. OSM took the position that SMCRA regulations require the reclamation fee to be calculated “at the time of the initial bona fide sale, transfer of ownership, or use by the operator,” see 30 C.F.R. § 870.12(b), and not while coal remains in the ground. Because any lignite coal mined by Wyodak is comingled with non-lignite coal prior to sale, OSM concluded Wyodak did not qualify for the lower reclamation fee. On the *1130 same basis, OSM refused Wyodak’s retroactive refund claim for the years 1980 to 2005. Both decisions were upheld by an OSM Audit Appeals Officer.
Wyodak then sued the United States in federal district court, seeking a refund of $2,245,477.14 it allegedly overpaid in reclamation fees, and a declaratory judgment with respect to future fees. Both parties moved for summary judgment. The district court rejected the United States’ argument that the court lacked subject-matter jurisdiction, but granted the government’s motion on the merits.
On appeal, Wyodak contends the district court erred in its merits determination. The government renews its argument that the district court lacked jurisdiction. We do not reach the merits because we agree with the government’s jurisdictional position.
II
A
Most suits for money damages against the United States proceed under the Tucker Act, 28 U.S.C. § 1491, which provides a limited waiver of the United States’ sovereign immunity and grants “jurisdiction [to] the Court of Federal Claims for claims against the United States founded upon the Constitution, Acts of Congress, executive regulations, or contracts and seeking amounts greater than $10,000.” Normandy Apartments, Ltd. v. U.S. Dep’t of Hous. & Urban Dev., 554 F.3d 1290, 1295 (10th Cir.2009) (quotation omitted). Although we have occasionally called the Court of Federal Claims’ jurisdiction over such claims “exclusive,” e.g., id. (quotation omitted), its jurisdiction is only exclusive over claims which no other federal court has the authority to hear. If there is an independent source of subject-matter jurisdiction over a claim against the United States, and some waiver of sovereign immunity other than the Tucker Act, a plaintiff is free to proceed in district court. “[T]he jurisdiction of the Court of [Federal] Claims is not exclusive; rather, there is rarely any statute available that waives sovereign immunity for suits in the district court, other than the Tucker Act with its $10,000 limit.” C.H. Sanders Co. v. BHAP Hous. Dev. Fund Co., 903 F.2d 114, 119 (2d Cir.1990) (quotation and emphasis omitted) superseded by statute on other grounds, as stated in United Am. Inc. v. N.B.C. — U.S.A. Hous., Inc. Twenty Seven, 400 F.Supp.2d 59, 64 (D.D.C.2005).
Wyodak invokes one of those rare statutes that both waives sovereign immunity and grants subject-matter jurisdiction to the district courts, 28 U.S.C. § 1346(a)(1). That statute waives the United States’ sovereign immunity from suit, United States v. Williams, 514 U.S. 527, 530, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995), and gives the Court of Federal Claims and the district courts concurrent jurisdiction over:
Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws....
28 U.S.C. § 1346(a)(1).
One short phrase in section 1346, “internal-revenue tax,” establishes the jurisdictional battle lines in this case. Wyodak argues that the SMCRA reclamation fee is an “internal-revenue tax” because it is collected on internal, rather than external, revenue. The United States counters that an “internal-revenue tax” is a tax collected by the Internal Revenue Service (“IRS”) or imposed under the Internal Revenue Code.[1]
*1131 The district court agreed with Wyodak, relying entirely on a Sixth Circuit opinion, Horizon Coal Corp. v. United States, 43 F.3d 234 (6th Cir.1994). In Horizon Coal, the court concluded that 28 U.S.C. § 1346 provided for district court jurisdiction over a reclamation-fee dispute because “internal-revenue tax” means “revenue generated within the boundaries of the United States, as opposed to ‘external’ revenue.” Horizon Coal, 43 F.3d at 239. The government argued that adopting the broader definition of “internal-revenue tax” would require Horizon Coal to exhaust administrative remedies with the Secretary of the Treasury pursuant to 26 U.S.C. § 7422(a), which also uses the phrase “internal revenue tax.” But the Sixth Circuit held that the phrase “internal-revenue tax” had a different meaning when used in 26 U.S.C. § 7422. Although the phrase applied to all taxes on internal revenue under 28 U.S.C. § 1346, the court determined that the phrase applied only to taxes collected by the IRS when used in 26 U.S.C. § 7422. Horizon Coal, 43 F.3d at 239-40. The district court adopted this reasoning without further explanation.
B
We review the district court’s jurisdictional ruling de novo. Huerta v. Gonzales, 443 F.3d 753, 755 (10th Cir.2006). The same is true of the district court’s statutory interpretation. United States v. DeGasso, 369 F.3d 1139, 1144 (10th Cir.2004).
At the outset, we must state our disagreement with the district court’s reliance on Horizon Coal. A core tenet of statutory construction is that “identical words used in different parts of the same act are intended to have the same meaning.” Dep’t of Revenue v. ACF Indus., 510 U.S. 332, 342, 114 S.Ct. 843, 127 L.Ed.2d 165 (1994) (quotation omitted). Both 26 U.S.C. § 7422 and 28 U.S.C. § 1346 use the phrase “internal revenue tax” (or in the latter case “internal-revenue tax”), and in both instances, the language was added by the Revenue Act of 1921, Pub.L. No. 67-98, 42 Stat. 227. See tit. XIII, § 1318, 42 Stat. at 315 (predecessor of 26 U.S.C. § 7422); tit. XIII, § 1310(c), 42 Stat. at 311 (predecessor of 28 U.S.C. § 1346). Absent some very good reason to conclude that Congress intended the phrase “internal-revenue tax” to have two different meanings within the very same act, such a tortured interpretation should be avoided. Neither the Sixth Circuit nor Wyodak has provided such a reason. We conclude that the phrase “internal-revenue tax” must mean the same thing in 28 U.S.C. § 1346 as it does in 26 U.S.C. § 7422.
This, of course, requires that we decide which of the competing interpretations reflects Congress’ intent. In doing so, we start with the text of the statute. See United States v. Cisneros-Cabrera, 110 F.3d 746, 747 (10th Cir.1997). “The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.” Peters v. Wise (In re Wise), 346 F.3d 1239, 1241 (10th Cir.2003) (quotation omitted); see also King v. St. Vincent’s Hosp., 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991) (“Words are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used.... ” (quotation omitted)).
We are also mindful that 28 U.S.C. § 1346 implicates special rules of construction because it waives the United States’ immunity. In determining the extent to which a statute waives sovereign immunity, waiver must not be enlarged beyond the scope of the statutory language, and all *1132 ambiguities in the statute must be construed in favor of immunity. United States v. Williams, 514 U.S. 527, 531, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995), superseded by statute on other grounds, as stated in Wagner v. United States, 545 F.3d 298, 303 (5th Cir.2008).
C
As is often the case, the statutory text standing alone does not clearly favor one interpretation over the other. Wyodak claims that “internal revenue” simply refers to any revenue generated within the United States. The government contends that “internal revenue” refers to moneys collected by the IRS, or its precursor, the Bureau of Internal Revenue. Both readings are at least plausible constructions of the bare text. Cf. S. Utah Wilderness Alliance v. Office of Surface Mining Reclamation & Enforcement, 620 F.3d 1227, 1238 (10th Cir.2010).
But in construing § 1346(a)(1), we are not constrained to consider the three-word phrase in isolation; we must also consider the context in which the statute was drafted. See Wise, 346 F.3d at 1241. In 1954, the year in which the statute assumed its current form, see Act of July 30, 1954, Pub.L. No. 83-559, 68 Stat. 589, taxpayers who believed they had paid illegally-exacted taxes had three options for seeking recovery, see William T. Plumb, Jr., Tax Refund Suits Against Collectors of Internal Revenue, 60 Harv. L.Rev. 685, 686-87 (1947). First, they could sue the United States in the Court of Claims (now the Court of Federal Claims), 28 U.S.C. § 1491 (1952) (superseded). Second, they could bring suit “against the tax collector personally rather than against the United States.” See Williams, 514 U.S. at 532, 115 S.Ct. 1611 (citation omitted).[2] Or, third, they could invoke the old version of § 1346(a)(1), which was identical to the current version, but with two extra conditions: a district court only had jurisdiction “(i) if the claim does not exceed $10,000 or (ii) even if the claim exceeds $10,000 if the collector of internal revenue by whom such tax, penalty or sum was collected is dead or is not in office as collector of internal revenue when such action is commenced. ...” 28 U.S.C. § 1346(a)(1) (Supp. V 1952) (superseded).
In other words, at the time the current version of § 1346(a)(1) was amended, its jurisdictional grant was limited and in *1133 terstitial, intended to give taxpayers a remedy when the other two options (suing in the Court of Claims or suing the collector personally) were inadequate. The rationale for the $10,000 limitation was “the feeling that taxpayers wealthy enough to be assessed taxes in excess of $10,000” could afford to exercise option one and sue in the Court of Claims, but that others, subject to lower taxes, “could not afford to pursue an action in Washington.” H.R.Rep. No. 83-659, at 2, 1954 U.S.C.C.A.N. 2716, 2717 (1953). Likewise, the second exception allowed direct suits against the United States in situations where the collector could not be sued personally.
Another contextual consideration warrants our attention. In 1952, President Truman issued Reorganization Plan No. 1, which drastically changed the structure of internal revenue collection in the United States. See Bryan T. Camp, Theory and Practice in Tax Administration, 29 Va. Tax Rev. 227, 241 (2009). Since 1862, income taxes had been collected by presidentially-appointed assessors and collectors who were effectively sovereign within their geographic jurisdictions. Id. But after a House Ways and Means Committee inquiry revealed widespread corruption in this system, investigators concluded that the “collectors could not be effectively supervised by the Commissioner [of Internal Revenue], or even by Treasury, because of their political connections.” Id. at 241-42. President Truman’s Plan sought to replace the collectors with district commissioners, who were career civil service employees rather than political appointees. See Reorganization Plan No. 1 of 1952, H.R. Doc. No. 82-327, at 3 (1952). Congress quickly approved the Plan, and over the next two years, the Bureau of Internal Revenue became the IRS, with tax administration being divided among nine geographic regions (headed by regional directors) and sixty-four districts (headed by district directors). Camp, supra, at 242-43. “District directors now held all the old powers of the assessor and collector combined.” Id. at 242.
Having explained its context, we proceed to interpreting the statute itself. The present version of § 1346(a)(1) was created mid-1954, when the eighty-third Congress passed S. 252, 83d Cong. (1st sess.1954), creating Pub.L. No. 83-559, 68 Stat. 589. Sponsored by Georgia Senator Walter George, S. 252 was introduced as a “very simple bill” with two modest goals: “to preserve the right of trial by jury to a [taxpayer claiming a refund] and to permit [him] to bring his suit in the district court in the district in which he lives.” Civil Actions in District Courts to Recover Taxes: Heaving Before the Subcomm. on Improvements in Judicial Machinery of the S. Comm, on the Judiciary, 83d Cong. 2. (1953) [hereinafter S. 252 Hearings ] (statement of Sen. George).
Congress had the recent reorganization of the nation’s internal revenue collection in mind when it considered S. 252. Senator George stated that the bill was necessary because “the reorganization of the Bureau of Internal Revenue created some doubt in the minds of a great many lawyers whether the right of action [against the collector] would survive.” S. 252 Heavings at 2 (statement of Sen. George). Senator George confirmed that the “right of action did survive ... against the chief collector within [a] State.” Id. What had been an action against the collector under the common law could now be brought either as a personal suit against an IRS director, or as a suit against the United States under § 1346(a)(1). However, because at the time S. 252 was passed the usual taxpayer suit was a personal action against the collector, such an action had to be brought in the judicial district in which the collector resided. See S. 252 Hearings *1134 at 3 (statement of Elbert Tuttle, Treasury Department general counsel). Consequently, taxpayers who lived in the collector’s judicial district had an advantage over those residing elsewhere. Id. Congress sought to expand this benefit to all taxpayers. See id. at 2.
The only change S. 252 made to § 1346(a)(1) was to excise the two conditions for district court jurisdiction (the $10,000 limit or the death of the tax collector), thereby allowing all “internal-revenue tax” refund suits to be brought in district court. In effect, S. 252 recognized that personal suits against the tax collector were a legal fiction, and allowed those suits to be heard in their true form — as “a suit against the United States.” S. 252 Hearings at 4 (statement of Mr. Tuttle). By converting tax actions from personal suits against the collector into suits against the United States, S. 252 allowed the actions to be brought in a taxpayer’s home district.
As S. 252’s limited purpose suggests, the bill was not intended to drastically alter the type of claims that could be brought in federal courts. Rather, the bill merely changed where those claims could be brought. After Pub.L. No. 83-559 was enacted, taxpayers could file tax refund suits in their home districts, rather than being limited to the Court of Claims or the tax collector’s home district. But Pub.L. No. 83-559 was not intended to provide “new substantive rights to the taxpayers; it simply makes it easier for them ... to sue in the jurisdiction in which they reside.” S. 252 Hearings at 4 (statement of J.G. Sourwine, subcommittee counsel).
As this legislative history clarifies, S. 252 did not create any substantive rights that did not exist before its enactment. Accordingly, the “substantive rights” granted by § 1346(a)(1), as amended by Pub.L. No. 83-559, go no further than the rights that existed at common law against the tax collector. Moreover, the legislative history confirms that the only “substantive right[ ],” S. 252 Hearings at 4, granted by § 1346(a)(1) — both before and after its amendment — is the right to sue for a refund of taxes collected by the IRS or the Bureau of Internal Revenue.
Reporting on S. 252, the House Committee on the Judiciary lists a personal suit against the tax collector as one of the four ways “a Federal taxpayer who feels aggrieved by a deficiency assessment against him may contest the Bureau of Internal Revenue’s determination of a tax.” H.R.Rep. No. 83-659, at 1, 1954 U.S.C.C.A.N. 2716, 2716 (1953) (emphasis added). The conference committee explained that S. 252 abolished “[t]he fiction that the [tax refund] action is against an individual (i.e., the director or former director or former collector of Internal Revenue ).” H.R.Rep. No. 83-2276, at 2, 1954 U.S.C.C.A.N. 2716 (1954) (emphasis added). And the Senate subcommittee report explains that the bill was proposed in response to the reorganization of the Bureau of Internal Revenue, S. 252 Hearings at 2, and that the only purpose of S. 252 is “to give the taxpayers throughout the country the same right that those taxpayers” who live in the same district as their Bureau of Internal Revenue tax collector already possessed, S. 252 Hearings at 4, i.e., the right to bring a suit for recovery of taxes that the Bureau of Internal Revenue illegally collected.
We are persuaded by this legislative history that, for purposes of district court jurisdiction under 28 U.S.C. § 1346(a)(1), Congress intended the phrase “internal-revenue tax” to mean taxes collected by the IRS. Suits for recovery of other fees and taxes, even if they can be characterized as “internal revenue,” do not fall within the statute’s ambit.
*1135 Although we announce this rule for the first time, we note that our interpretation best harmonizes existing case law on § 1346(a)(1) and its interaction with related statutes. First, by providing a uniform interpretation of the phrase “internal revenue” as between § 1346 and 26 U.S.C. § 7422, those statutes seamlessly interlock in the manner intended by Congress. By using the same definition in both statutes, the provisions work together to require that all tax refund claimants seeking relief in district court must first exhaust their administrative remedies with the Secretary of the Treasury. The contrary construction adopted in Horizon Coal and by the district court below would create a class of claims over which district courts possessed jurisdiction regardless of exhaustion. See 42 F.3d at 239-40.
Further, our reading is consistent with case law from other jurisdictions interpreting § 1346(a)(1) — with the exception of the aforementioned Sixth Circuit analysis. The Internal Revenue Code provides that “[t]he Secretary [of the Treasury] shall collect the taxes imposed by the internal revenue laws.” 26 U.S.C. § 6301. We are unable to find any case in which a district court refused § 1346(a)(1) jurisdiction over a tax assessed under the Internal Revenue Code (and therefore within the IRS’ collection authority). See, e.g., Pittston Co. v. United States, 199 F.3d 694, 701-02 (4th Cir.1999) (Coal Act premiums, 26 U.S.C. § 9701); Kaucky v. Sw. Airlines Co., 109 F.3d 349, 350 (7th Cir.1997) (airline excise tax, 26 U.S.C. § 4261); Rue R. Elston Co. v. United States, 532 F.2d 1176, 1177 (8th Cir.1976) (manufacturer excise tax, 26 U.S.C. § 4061); PNC Bank, N.A. v. United States, No. 2:04CV 1576, 2006 WL 1604678, at *1 (W.D.Pa. May 16, 2006) (unpublished) (federal telecommunications excise taxes, 26 U.S.C. § 4251); Kanawha Dredging & Minerals Co. v. United States, No. 2:85-1306, 1987 WL 49371, at *1 (S.D.W.Va. Dec.l, 1987) (unpublished) (Black Lung excise tax, 26 U.S.C. § 4121). In contrast, district courts have only refused § 1346(a)(1) jurisdiction for procedural reasons, e.g., Flora, 362 U.S. at 146, 80 S.Ct. 630, or because the suit is not for a refund of taxes collectible by the IRS. See, e.g., Murphy v. United States, 45 F.3d 520, 521, 523 (1st Cir.1995) (claim regarding seizure of real estate); Cleveland Chair Co. v. United States, 526 F.2d 497, 499 (6th Cir.1975) (action under Uniform Commercial Code); Dresser Indus., Inc. v. United States, 73 F.Supp.2d 682, 692 (N.D.Tex.1999) (claim for carry-forward of tax credits); United States v. Raytown Lawnmower Co., 763 F.Supp. 411, 412-13 (W.D.Mo.1991) (conversion and money received claims); DuPont Glore Forgan Inc. v. Am. Tel. & Tel. Co., 428 F.Supp. 1297, 1307-08 (S.D.N.Y.1977) (claim defendants tortiously increased tax liability); Film Truck Serv., Inc. v. Nixon, 216 F.Supp. 77, 78 (E.D.Mich.1963) (property-seizure claim); cf. United States v. Tri-No Enters., Inc., 819 F.2d 154, 159 (7th Cir.1987) (SMCRA reclamation fees are a form of excise tax, but are not imposed by Subtitle D of the Internal Revenue Code and thus the Code’s statute of limitations does not apply).
Ill
Unlike the majority opinion, which reads the pertinent statutory language as ambiguous, the concurrence concludes the same language is unambiguous in agreeing with the majority result. The concurrence provides an interesting and educational elaboration of the history of the phrase “internal-revenue law,” but the majority declines to incorporate the concurrence into its decision because it is well-established that, if an act is unambiguous, that ends the matter and resort should not be had to the statutory history. See United States v. Romero, 122 F.3d 1334, 1337 (10th Cir.1997).
*1136 IV
Wyodak does not argue that the SMCRA reclamation fee is collected by the IRS. Instead, it acknowledges that the fee is collected by OSM. Under the rule we announce today, that ends the inquiry. 28 U.S.C. § 1346(a)(1) did not give the district court jurisdiction over Wyodak’s claim, and Wyodak has not established an alternative basis for district court jurisdiction. It must bring this claim in the Court of Federal Claims.
We VACATE the district court’s judgment and REMAND with orders to DISMISS for lack of subject matter jurisdiction.

. The government does not argue the reclamation fee is not a tax.

. The right to sue the collector personally was a longstanding creature of common law. Sirian Lamp Co. v. Manning, 123 F.2d 776, 778 (3d Cir.1941), ovetruled on other grounds by Flora v. United States, 362 U.S. 145, 147 n. 1, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960). Although taxpayers could always sue a tax collector in state court, Congress also granted federal district courts jurisdiction over such claims in the Force Act (also known as the Bloody Bill) of 1833. See Force Act of 1833, ch. 57, § 2, 4 Stat. 632, 632-33 (1833); see also City of Phila. v. Collector, 72 U.S. (5 Wall.) 720, 728, 18 L.Ed. 614 (1867). Because such actions were technically personal suits, sovereign immunity was not implicated. See Smietanka v. Ind. Steel Co., 257 U.S. 1, 4, 42 S.Ct. 1, 66 L.Ed. 99 (1921).
Commentators called “[t]he suit against the collector for a refund ... a most anomalous action,” Plumb, supra, at 687, because the collector was deemed personally liable for erroneously collected taxes, see United States v. Kales, 314 U.S. 186, 199, 62 S.Ct. 214, 86 L.Ed. 132 (1941), but any recovery against him was paid by the Treasury, 28 U.S.C. § 842 (1940) (superseded). The personal suit was abolished with the enactment of 26 U.S.C. § 7422, which provides that tax refund suits "may be maintained only against the United States and not against any officer or employee of the United States.” Id.; see also Mikulski v. Centerior Energy Corp., 501 F.3d 555, 564 (6th Cir.2007) ("[Section 7422] was intended to provide taxpayers with a means to obtain relief from improper collections by tax collectors while also protecting government collection officers from being sued by taxpayers.”); cf. Brennan v. Sw. Airlines Co., 134 F.3d 1405, 1411 (9th Cir.1998).