# United States Court of Appeals for the Federal Circuit

———

**WYODAK RESOURCES DEVELOPMENT CORP.,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

———

2013-5049

———

Appeal from the United States Court of Federal Claims in No. 11-CV-0335, Judge Edward J. Damich.

———

Decided: December 13, 2013

———

WALTER F. EGGERS, III, Holland & Hart, LLP, of Cheyenne, Wyoming, argued for plaintiff-appellant. With him on the brief was ANDREW A. IRVINE, of Jackson, Wyoming.

A. BONDURANT ELEY, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were STUART F. DELERY, Acting Assistant Attorney General, and JEANNE E. DAVIDSON, Director.

———

Before LOURIE, BRYSON, and O'MALLEY, *Circuit Judges.*

BRYSON, *Circuit Judge.*

This is a pure statutory construction case. The proper construction of the statute, as applied to this case, is not obvious, as evidenced by the fact that the Court of Federal Claims and a district court have both construed the statute differently than we do. In the end, however, we conclude that the language and purpose of the statute are best served by adopting the construction proposed by the appellant.

I

The statute at issue is the Surface Mining Control and Reclamation Act of 1977 ("SMCRA"), 30 U.S.C. §§ 1201-1328. The Act was designed in part to require coal companies to underwrite the costs of restoring lands damaged by coal mining, especially surface mining. To achieve that goal, the statute imposes a fee on each ton of coal extracted from surface or subsurface mines in the United States. The fee is not uniform, but varies according to whether the coal came from a subsurface mine or a surface mine, and whether the coal is lignite or some other type of coal. This case turns on the latter distinction.

Section 402(a) of SMCRA imposes a reclamation fee of 28 cents per ton of coal produced by surface coal mining and 12 cents per ton of coal produced by underground mining, or 10 percent of the value of the coal at the mine, whichever is less. However, the statute provides that the reclamation fee for lignite coal shall be eight cents per ton or two percent of the value of the coal at the mine, whichever is less.[1] 30 U.S.C. § 1232(a). The statute defines

---

[1] Prior to fiscal year 2008, the reclamation fees were 35 cents per ton of coal produced by surface coal

"lignite coal" to mean "consolidated lignitic coal having less than 8,300 British thermal units ["BTUs"] per pound, moist and mineral matter free." *Id*. § 1291(30).

Lignite coal differs from other types of coal, i.e., bituminous, subbituminous, and anthracite, in that it is "brownish-black coal in which the alteration of vegetal material has proceeded further than in peat but not so far as subbituminous coal." U.S. Dep't of the Interior, Bureau of Mines, A Dictionary of Mining, Mineral, and Related Terms 641 (1968). "All [coal-like] fossil fuels form a continuous and progressive series, ranging from lignite, through the various bituminous coals, to anthracite." *Id*. at 896. Lignite produces less energy than other types of coal, as measured by the number of BTUs per pound.

Wyodak Resources Development Co. owns and operates the Wyodak Mine in the Powder River Basin near Gillette, Wyoming. The mine is in an area where the coal transitions from subbituminous to lignite in the coal seams. For example, Wyodak's evidence showed that in two seams otherwise consisting of subbituminous coal, an average of 4.2 feet of lignite occurred within eight feet above the parting of the two seams and an average of 5.6 feet of lignite occurred within nine feet below the parting.

Wyodak engages in open-pit mining, also known as strip mining, which involves removing the overburden over a seam of coal and then extracting the uncovered coal. Coal is dislodged from seams in the mine by explosive charges. Where the seam contains both lignite and subbituminous coal, the controlled explosions dislodge both types of coal. The coal is then carried by front-end

---

mining, 15 cents per ton of coal produced by underground mining, and 10 cents per ton of lignite coal. *See* Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432, div. C, § 202, 120 Stat. 2922, 3008.

loaders to an in-pit crusher system that crushes it into chunks about eight inches in diameter. After that initial processing, the coal is transported by conveyor belt to a secondary crusher where it is reduced to smaller sized pieces, after which it is stored for ultimate transport and sale.

The end product of this process is coal that consists of a mixture of subbituminous and lignite coal. The price at which the product is sold depends on the BTU per pound value of the particular mixture. The BTU value depends on the amounts of different types of coal contained in the mixture.

For years, Wyodak paid the higher statutory reclamation fee for non-lignite coal. In 2005, Wyodak retained an independent consulting service to determine whether lignite coal was present in the mine. After sampling and testing, the consulting service confirmed the presence of lignite coal. The consulting service estimated that 12 percent of the coal at the Wyodak mine was lignite and the remaining 88 percent was the higher quality subbituminous coal. An expert for the Office of Surface Mining ("OSM") later admitted that the Wyodak mine contains lignite coal along with subbituminous coal.

Wyodak then advised OSM that because some of the coal removed from the mine was lignite, the company had been overpaying the reclamation fee. When Wyodak sought a refund of its reclamation fees for the amount of lignite coal that it had extracted, OSM denied the request. In an administrative review, OSM maintained its position that all of Wyodak's coal was assessable at the higher fee for non-lignite coal having a BTU value higher than 8300 BTUs per pound. Wyodak then sought judicial review of OSM's decision.

Wyodak initially sought relief from a district court, which ruled against Wyodak on the merits. *Wyodak Res. Dev. Corp. v. United States*, No. 07-CV-301 (D. Wyo.

2009). On appeal, the Tenth Circuit dismissed the action for want of jurisdiction. *See Wyodak Res. Dev. Corp. v. United States,* 637 F.3d 1127 (10th Cir. 2011). Wyodak then filed this action in the Court of Federal Claims seeking a refund of a portion of the reclamation fees it had paid for coal that it produced from 1980 to 2006.

The Court of Federal Claims first ruled that it had jurisdiction only over the portion of the refund claims arising within six years of the May 2011 filing date. *Wyodak Res. Dev. Corp. v. United States*, 107 Fed. Cl. 624, 630-31 (2012). It then denied relief on the merits with regard to the claims that were still within its jurisdiction. *Id.* at 631-32. The court held that SMCRA imposes the reclamation fee on coal as extracted. Because the method of extraction at the Wyodak mine results in a blended-coal product, the court concluded that the coal as extracted is not readily identifiable as either subbituminous or lignite. Because the BTU value of the blended product is higher than 8300 BTUs per pound, the court held that Wyodak was not entitled to a refund for any lignite coal that might be contained in the mixture. Wyodak then took this appeal.[2]

## II

On appeal, Wyodak contends that approximately 12 percent of the coal in its mine is lignite, and that it is entitled to the lower statutory fee for that portion of its extracted coal. Wyodak argues that the mixing of lignite and subbituminous coal that results from the extraction process does not change the fact that the extracted prod-

---

[2] Wyodak has not appealed from the part of the trial court's judgment dismissing the portion of the refund claim going back more than six years. That part of the judgment is not affected by our ruling on the statutory construction claim.

uct still contains a significant portion of lignite.  It was lignite in the ground, Wyodak argues, and it is no less lignite after it is extracted.

We agree with Wyodak.  SMCRA makes the reclamation fee turn on the source or rank of coal that is extracted from the ground.  *See Consolidation Coal Co. v. United States,* 615 F.3d 1378, 1382 (Fed. Cir. 2010); *Consolidation Coal Co. v. United States,* 528 F.3d 1344, 1347 (Fed. Cir. 2008).  The Act refers not only to lignite coal, but also to bituminous coal, 30 U.S.C. § 1277, and anthracite coal, *id.* § 1279.  It does not refer to mixed or blended coal as a type or rank of coal, however.  The focus on recognized ranks of coal indicates that when the reclamation fee depends on the type of coal extracted from the mine, the fee should be calculated based on the amounts of coal of each rank that are extracted.

The coal that is extracted from Wyodak's mine includes lignite.  The mixture that results from the extraction process in areas where both subbituminous and lignite coal are found is therefore partly lignite in composition.  The fact that lignite is mixed with subbituminous coal in the course of the extraction process does not make the lignite portion of the mixture anything other than lignitic coal.

The government relies on *Consolidation Coal Co. v. United States*, 615 F.3d 1378 (Fed. Cir. 2010), and *Consolidation Coal Co. v. United States,* 528 F.3d 1344 (Fed. Cir. 2008), for the proposition that coal "produced" under the statute means coal that is "extracted."  The government contends that because Wyodak's coal, following its extraction, is a mixture of lignite and subbituminous coal, it is not lignite coal at that stage.  That argument misses the point.  Following the extraction process, the product of the mine may be a mixture of different types of coal, but that mixture still contains lignite, and lignite is subject to a lower statutory reclamation fee.

The government's theory of this case distorts the test for determining whether coal will be taxed at the normal rate or at the rate for lignite. Under the government's theory, it does not matter how much lignite is contained in a mixture of different types of coal that is extracted from the mine. According to the government, as long as the mixture has a BTU value of more than 8300 BTUs per pound, the entire mixture will be subject to the higher fee; none of it will be subject to the rate for lignite, no matter how much lignite the mixture contains.

That theory ignores the fact that the statute fixes the reclamation fee for "lignite coal" at a lower rate than all other coal, 30 U.S.C. § 1232(a), and defines "lignite coal" as "consolidated lignitic coal having less than 8,300 British thermal units per pound, moist and mineral matter free," *id.* § 1291(30). The statutory test turns on the amounts of coal of different ranks in the product that is extracted from the mine; it is not simply a function of the BTU value of the mixture.

The legislative history of SMCRA shows that Congress sought to impose lesser fees on lignite coal because that coal, having a lower energy level, is less valuable than other forms of coal and therefore would be disproportionately affected if it were subject to the same per ton reclamation fee as other coal. *See* H.R. Rep. No. 95-218, at 137 (1977); H.R. Conf. Rep. No. 95-493, at 98 (1977) ("lignite generally has had a lower value than coal and thus a 10 percent fee could be onerous"); 121 Cong. Rec. 6689-90 (1975) (statement of Rep. Andrews); *id.* at 6797 (statements of Reps. Hays and Udall). To ignore the presence of substantial amounts of lignite in calculating the reclamation fee would be inconsistent with the statutory purpose of imposing a lesser burden on that less valuable type of coal.

Moreover, the legislative history shows that Congress explicitly considered a test that would make the amount

of the reclamation fee turn solely on the BTU value of the coal extracted from a mine. *See* H.R. Rep. No. 93-1072, at 35 (1974). Congress ultimately rejected that approach in favor of charging a single fee for all types of coal other than lignite and a lesser fee for lignite. Yet the effect of the government's test would be to make the reclamation fee turn solely on the BTU value of the blended coal, exactly the approach that Congress rejected in favor of creating a special reclamation fee rate for lignite coal.

The government's "BTU-only" test would produce two potential anomalies. A mixture of coal types that has a BTU value above 8300 would be subject to the higher fee, even though it might contain a substantial amount of lignite. But by the same token, a mixture of coal types that has a BTU value below 8300 would be subject to the lower, lignite fee, even though it might contain a substantial amount of higher quality coal, such as subbituminous coal. Those results would fly in the face of a statutory scheme that bases the reclamation fee on the type of coal extracted, not the energy level of the extracted product, without regard to its composition.

The government's theory suffers from another flaw as well. The government acknowledges that if, at the conclusion of the extraction process, Wyodak placed its lignite and subbituminous coal in separate containers, the coal in the lignite containers would be subject to the lower statutory reclamation fee. We see no reason that a different result should obtain simply because the extraction process results in Wyodak generating product that consists of a mixture of lignite and subbituminous coal that Wyodak does not separate into its constituent parts. If Wyodak is able to verify the quantity of lignite coal in the mixture that it extracts from the mine by a reliable method, there is no reason that the method of extraction should be deemed to convert coal that otherwise would have been treated as 12 percent lignite into a mixture that is treated as if it contains no lignite at all.

The government's theory of this case is contrary to the way OSM assesses reclamation fees in other situations in which the product consists of a mixture of coal that is subject to different fee rates. One such example involves in situ gasification. In situ gasification is an on-site process in which the coal is converted into a gaseous substance that is then sold to customers. Once the coal is converted into gaseous form, it is impossible to determine whether it was originally lignite or some other form of coal.

OSM's regulations provide that the reclamation fee assessed on the coal that is subject to gasification is determined by analyzing the type of coal that is used in the gasification process. 30 C.F.R. § 870.13(a)(4). That regulation makes clear that the statutory requirement that lignite coal be treated differently from other types of coal requires that the fees must be based on a pre-processing determination of the type or types of coal that are used in the gasification process.

Another such example involves mixtures of surface-mined coal and underground-mined coal. Surface-mined coal is subject to a different fee rate from underground-mined coal. When surface-mined coal and underground-mined coal are combined before the coal is weighed for fee purposes, OSM's regulations provide that the higher reclamation fee will apply "unless the operator can substantiate the amount of coal produced by surface mining by acceptable engineering calculations or other reports which the Director may require." 30 C.F.R. § 870.12(c). Thus, in that analogous situation, OSM allows the mine operator to demonstrate that prior to mixing the coal from the surface and subsurface mines, the components of the mixture were subject to different fee rates and to have the fee lowered in light of the lower fee rate applicable to subsurface mined coal.

To reach that conclusion, OSM must necessarily be construing the reclamation fee statute to require consideration of the source of the constituents of the coal mixture. Applying the same analysis to an extracted mixture of lignite and subbituminous coal would require the mixture to be characterized according to its constituent components.[3]

A final consideration favoring Wyodak's construction is based on a parallel statute, the Black Lung Excise Tax, 26 U.S.C. § 4121. That statute imposes a tax on coal from surface and underground mines, but does not impose the tax on lignite coal that is extracted from those mines. *Id.* § 4121(b), (c). By regulation, the Internal Revenue Service has addressed the situation presented in this case and has ruled that "[i]f a producer extracts both taxable coal and lignite, then the producer must maintain adequate records to establish the portion of the mineral mined that is exempt from the tax." 26 C.F.R. § 48.4121-1(c)(1). Applying that regulation, the Internal Revenue Service has interpreted the statutory exemption for lignite to apply to the lignite present in Wyodak's extracted coal, even though the coal as extracted consists of a mixture of lignite and subbituminous coal. *See* IRS Chief Counsel Advice No. AM2009-007 (Aug. 21, 2009). While the Internal Revenue Service's regulations and practice in applying the Black Lung Excise Tax Act are not directly applicable to OSM's construction of SMCRA, the adminis-

---

[3] The government acknowledges that no OSM regulation explicitly addresses the issue this case and that the case therefore does not entail deference to the agency's construction of the applicable statute under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984), or deference to the agency's interpretation of its own regulations under *Auer v. Robbins,* 519 U.S. 452 (1997).

trative construction of the analogous Black Lung Excise Tax provides support for Wyodak's construction of the SMCRA reclamation fee provision by demonstrating that Wyodak's construction is both reasonable and administrable.

For the foregoing reasons, we conclude that OSM's application of SMCRA to the coal produced at the Wyodak mine is legally incorrect. That is not to say that Wyodak is necessarily entitled to the refund that it seeks. It remains for Wyodak to produce satisfactory evidence, pursuant to reliable methods of testing and ranking, showing that the coal extracted from its mine contains an appreciable quantity of lignite. Any issues as to the sufficiency of Wyodak's evidence in that regard remain to be resolved on remand.

**REVERSED and REMANDED**